IN THE MATTER OF:  DONALD MILTON HOPKINS, JR. (DOB: 7/8/1993),
A MINOR CHILD

No. COA03-31

(Filed 17 February 2004)

**1. Termination of Parental Rights— jurisdiction—pending appeal of prior planning order**

The trial court lacked jurisdiction to enter a termination of parental rights order during the pendency of the father's appeal of a prior permanency planning order. N.C.G.S. § 7B-1003.

**2. Termination of Parental Rights— right to counsel— waiver—inaction before hearing**

The right to counsel for a termination of parental rights hearing cannot be waived by inaction prior to the hearing, and the court erred in this case by denying the mother's request for court-appointed counsel on that basis.

Appeal by respondent-parents from judgment entered 24 July 2002 by Judge Jonathan L. Jones in Burke County District Court. Heard in the Court of Appeals 11 June 2003.

*Stephen M. Schoeberle for petitioner-appellee Burke County Department of Social Services; Mary R. McKay, Guardian Ad Litem.*

*Susan J. Hall for respondent-appellant Donald Milton Hopkins, Sr.*

*Rebekah W. Davis for respondent-appellant Michelle Stancil Riddle.*

ELMORE, Judge.

Donald Milton Hopkins, Sr. (respondent-father) and Michelle Stancil Riddle (respondent-mother) (collectively, respondents) appeal separately from an order terminating their parental rights (TPR order) with respect to their son, D.J. For the reasons stated herein, we vacate the portion of the TPR order terminating respondent-father's parental rights, and we reverse and remand the portion of the TPR order terminating respondent-mother's parental rights.

*Background*

This Court, in an unpublished opinion, recently decided respondent-father's appeal from a permanency planning review order in which the trial court (1) concluded the permanent plan for D.J. should be adoption, and (2) ordered Petitioner Burke County Department of Social Services (DSS) to file a petition to terminate respondents' parental rights, which petition resulted in the TPR order from which both respondents now appeal in the present case. *See In re Hopkins*, 157 N.C. App. 572, 579 S.E.2d 520 (2003). In the earlier case, we vacated the permanency planning review order at issue and remanded the case to the trial court for additional findings of fact. *Id.* The facts regarding DSS' involvement with D.J. through entry of the

permanency planning review order giving rise to respondent-father's earlier appeal are fully set forth in our previous opinion, and we repeat herein only those facts germane to the present appeal.

DSS has been involved with respondents, who lived together for eight years until 1995 but never married, and D.J. since shortly after D.J.'s birth in 1993. Following an incident of domestic violence, D.J. was placed in the non-secure custody of DSS in March 1995. D.J. was adjudicated neglected in May 1995, and he remained in DSS' custody until May 1997, when custody was awarded to D.J.'s maternal aunt, Michelle Hopkins (Ms. Hopkins). The trial court reviewed the case on 30 April 1998 and ordered that D.J. remain with Ms. Hopkins, but in June 1999 Ms. Hopkins, without the trial court's approval, returned physical custody of D.J. to respondent-father. Respondent-father's step-brother Boyd Lane, who was living with respondent-father at the time, sexually abused D.J., for which Lane later pleaded guilty to taking indecent liberties with a child. As a result DSS requested that D.J. be placed in therapy, but respondent-father was initially resistant and thereafter inconsistent in facilitating D.J.'s treatment.

Respondent-mother visited D.J. only sporadically while D.J. was in Ms. Hopkins' custody, but she visited regularly after Ms. Hopkins returned physical custody of D.J. to respondent-father. However, after the summer of 2000, respondent-mother went with her husband to New York in an attempt to gain custody of his children and had no further contact with D.J. until October 2001.

On 29 November 2001, following a review hearing, the trial court entered an order which granted legal and physical custody of D.J. to DSS, terminated reunification efforts with respondents and with Ms. Hopkins, and ordered a permanency planning review. The permanency planning review was held on 29 November 2001, and by order entered 7 December 2001 (permanency planning review order), the trial court continued custody of D.J. with DSS; ceased reunification efforts with respondents and with Ms. Hopkins; set adoption as the permanent plan for D.J.; and ordered DSS to file a petition to terminate respondents' parental rights within sixty days.

Respondent-father appealed from the permanency planning review order. Neither respondent-mother nor Ms. Hopkins did so. On 20 March 2002, while respondent-father's appeal of the permanency planning review order was pending, DSS filed a petition to terminate respondents' parental rights (TPR petition), which was served upon respondent-father on 21 March 2002 and upon respondent-mother on

21 May 2002. Respondent-father filed his answer to the TPR petition on 26 March 2002. Respondent-mother neither filed an answer nor attended the pre-trial conference held by the trial court on 13 June 2002, at which time respondent-mother's counsel of record, who represented her at the November 2001 review hearing but had not been appointed to represent her for the TPR proceedings, was allowed to withdraw from representation of respondent-mother. While respondent-father's appeal of the permanency planning review order was still pending, the trial court heard the TPR petition on 11 July 2002. At the call of the case, respondent-mother requested that the trial court appoint counsel for her. The trial court denied respondent-mother's request and proceeded with the hearing. The trial court entered the written TPR order on 24 July 2002, again during the pendency of respondent-father's appeal from the permanency planning review order.

Respondent-mother filed notice of appeal from the TPR order on 17 July 2002, and respondent-father filed notice of appeal from the TPR order on 30 July 2002. Thereafter, in an opinion filed 6 May 2003, this Court vacated the permanency planning review order, holding that the trial court did not make the necessary findings of fact required by N.C. Gen. Stat. §§ 7B-907 and 7B-507, and remanded the case to the trial court for additional findings of fact. *See Hopkins*, 157 N.C. App. at 572, 579 S.E.2d at 520.

We now turn to respondents' separate appeals from the TPR order, taking the appeals of respondent-father and respondent-mother in turn.

*Respondent-father's appeal*

[1] Respondent-father brings forth five assignments of error in his appeal of the TPR order, asserting generally that (1) DSS' TPR petition failed to comply with the pleading requirement of N.C. Gen. Stat. § 7B-1104(7), and (2) the trial court abused its discretion in concluding that his parental rights to D.J. should be terminated. However, because we conclude the trial court lacked jurisdiction pursuant to N.C. Gen. Stat. § 7B-1003 to enter the TPR order during the pendency of respondent-father's appeal of the permanency planning review order, we do not reach these issues. *See Lemmerman v. Williams Oil Co.*, 318 N.C. 577, 580, 350 S.E.2d 83, 86, *reh'g denied*, 318 N.C. 704, 351 S.E.2d 736 (1986) ("When the record clearly shows that subject matter jurisdiction is lacking, the Court will take notice and dismiss the action *ex mero motu*.") We therefore vacate that portion of the

TPR order terminating respondent-father's parental rights to D.J, for the reasons discussed below.

Under the statutory scheme established by our Juvenile Code, "review of any final order of the court in a juvenile matter . . . shall be before the Court of Appeals." N.C. Gen. Stat. § 7B-1001 (2003). The statute further provides that "[a] final order shall include: (1) Any order finding absence of jurisdiction; (2) Any order which in effect determines the action and prevents a judgment from which appeal might be taken; (3) Any order of disposition after an adjudication that a juvenile is abused, neglected, or dependent; or (4) Any order modifying custodial rights." *Id.* Pending disposition of such an appeal, the trial court's authority over the juvenile is statutorily limited to entry of "a *temporary* order affecting the custody or placement of the juvenile as the court finds to be in the best interests of the juvenile or the State." N.C. Gen. Stat. § 7B-1003 (2003) (emphasis added).

In the present case, respondent-father *first* appealed from the 7 December 2001 permanency planning review order, which order set adoption as the permanent plan for D.J. and ordered DSS to file a petition to terminate respondents' parental rights. *During the pendency of that appeal,* (1) DSS filed the TPR petition on 20 March 2002; (2) the trial court held a hearing on the TPR petition on 11 July 2002; and (3) the trial court entered the TPR order which is the subject of the *present* appeal on 24 July 2002. Meanwhile, respondent-father's appeal of the permanency planning review order remained pending thereafter until 26 May 2003, when this Court's mandate issued twenty days after the 6 May 2003 filing of its opinion vacating and remanding the permanency planning review order. *See* N.C.R. App. P. 32(b).

An order terminating parental rights to a juvenile is, by its very nature, a *permanent* rather than a *temporary* order affecting the juvenile's custody or placement. *See* N.C. Gen. Stat. § 7B-1100 (2) (2003) ("It is the further purpose of this Article [11, governing termination of parental rights] to recognize the necessity for any juvenile to have a permanent plan of care at the earliest possible age[]. . . .") We hold that by entering the TPR order while respondent-father's appeal from the earlier permanency planning review order was still pending, the trial court exceeded the authority expressly granted to it under N.C. Gen. Stat. § 7B- 1003 to "enter a *temporary* order affecting the custody or placement of the juvenile" during the pendency of an earlier appeal. Accordingly, we conclude that the trial court was without jurisdiction to enter the order terminating respondent-father's

parental rights to D.J., and the portions of the TPR order terminating respondent-father's parental rights must be vacated. *See In re Rikard*, 161 N.C. App. 150, 153-54, 587 S.E.2d 467, 468-69 (2003) (holding that under a statute nearly identical to the controlling statute in the present case, the trial court exceeded its statutory authority by entering an amended adjudicatory order and a disposition order during the pendency of an appeal from the original adjudicatory order).

*Respondent-mother's appeal*

As noted above, unlike respondent-father, respondent-mother did *not* appeal from the 7 December 2001 permanency planning review order. Consequently, the pendency of respondent-*father's* appeal from the permanency planning review order did not remove from the trial court jurisdiction to enter the order terminating respondent-*mother's* parental rights to D.J. Our analysis must therefore proceed to respondent-mother's assignments of error.

**[2]** By her first assignment of error, respondent-mother contends the trial court erred by denying her request for court-appointed counsel to represent her in the TPR proceedings. We agree.

At the outset, we note this Court's previous recognition that "a 'parent['s] right to counsel in a proceeding to terminate parental rights is now guaranteed in all cases by statute' and that '[a] parent's interest in the accuracy and justice of the decision to terminate his or her parental rights is a commanding one.' " *Little v. Little*, 127 N.C. App. 191, 192, 487 S.E.2d 823, 824 (1997) (*quoting In re Bishop*, 92 N.C. App. 662, 664, 375 S.E.2d 676, 678 (1989)). We consider respondent-mother's first assignment of error with these principles in mind.

Section 7B-1101 of our General Statutes provides that with respect to TPR proceedings, a "parent has the right to counsel and to appointed counsel in cases of indigency unless the parent waives the right." N.C. Gen. Stat. § 7B-1101 (2003). Section 7B-1106 mandates that the summons issued in connection with TPR proceedings include "[n]otice that if they are indigent, the parents are entitled to appointed counsel; the parents may contact the clerk immediately to request counsel[,]" as well as "[n]otice that this is a new case. Any attorney appointed previously will not represent the parents in this proceeding unless ordered by the court[.]" N.C. Gen. Stat. § 7B-1106(b)(3), (4) (2003). Finally, at the hearing on a TPR petition, the trial court:

shall inquire whether the juvenile's parents are present at the hearing and, if so, whether they are represented by counsel. If the parents are not represented by counsel, the court shall inquire whether the parents desire counsel but are indigent. In the event that the parents desire counsel but are indigent as defined in G.S. 7A-450(a) and are unable to obtain counsel to represent them, counsel *shall* be appointed to represent them in accordance with rules adopted by the Office of Indigent Defense Services. The court shall grant the parents such an extension of time as is reasonable to permit their appointed counsel to prepare their defense to the termination petition or motion. In the event that the parents do not desire counsel and are present at the hearing, the court shall examine each parent and make findings of fact sufficient to show that the waivers were knowing and voluntary. . . .

N.C. Gen. Stat. § 7B-1109(b) (2003) (emphasis added).

In considering an earlier, substantially similar version of the foregoing statutory scheme, this Court previously stated as follows:

*It is clear from reading the above statutes that the General Assembly did not intend to allow for waiver of court appointed counsel due to inaction prior to the hearing.* [Former] G.S. 7A-289.30 makes it quite clear that if the parent is present at the hearing, which respondent undoubtedly was, and does not waive representation, counsel "shall" be appointed. . . . If the party is present in court, waiver can only result from an examination by the trial court and a finding of knowing and voluntary waiver.

*Little,* 127 N.C. App. at 192-93, 487 S.E.2d at 825 (emphasis added).

In the present case, the TPR order states as follows regarding respondent-mother's request for court-appointed counsel:

Upon the matter being called for hearing, [respondent-mother] requested court-appointed counsel. The Court noted that [respondent-mother] had been served personally on May 21, 2002, with a summons, the petition and notice of the [pre-trial conference] that took place on June 13, 2002; that [respondent-mother] failed to appear at that [pre-trial conference]; *that the Court entered an order that day that it would consider such a request if [respondent-mother] made it prior to this day* but that the hearing this day would not be postponed in order for her to obtain court-appointed counsel; and that the clerk had communicated the contents of that order to [respondent-mother] over the

telephone since the [pre-trial conference]. Therefore, the Court denied her motion.

Similarly, the transcript from the TPR hearing indicates that the trial court stated as follows in response to respondent-mother's request for court-appointed counsel:

> Let the record show that this summons in this proceeding, the record is in the file, was served on [respondent-mother] on 8/21 [sic]. The summons gave her written notice that she needed to come file for a court ordered attorney if she wanted one. She had 30 days to file an answer to this petition to terminate her parental rights.
>
> Let the record further show that she did not either appear in court, or ask for a court appointed attorney in the scheduled session that was scheduled for . . . June 13. *Nor did she appear before the clerk at any time since the service of the petition to apply for a court appointed attorney.* She has not filed a written response to the petition. The time for filing such a response has expired. She was informed by the clerk on the telephone in the clerk's office on June 13 that she needed to appear and apply for a court appointed attorney prior to the—today's date, if she wanted one. . . .
>
> She's appeared in court this date to apply for a court appointed attorney and the questioning continues. The court will deny her application . . . for her failure to appear and apply for an attorney. . . .

It is clear from both the TPR order and the transcript that the trial court denied respondent-mother's request for court-appointed counsel because she failed to follow the trial court's directive to make such application to the clerk of court *before* the 11 July 2002 TPR hearing. The transcript indicates that respondent-mother's failure to file an answer to the TPR petition was also a factor in the trial court's denial of court-appointed counsel. Here, as in *Little*, respondent-mother was present at the TPR hearing, requested appointed counsel, and was denied because she had not filed an answer or requested a court-appointed attorney prior to the TPR hearing. We are thus bound by our previous conclusion in *Little* that "[t]here is no support, statutory or otherwise, for the trial court's ruling that in North Carolina the right to counsel can be waived by inaction prior to the termination hearing." *Little*, 127 N.C. App. at 193, 487 S.E.2d at 825. Accordingly,

STATE EX REL. UTILS. COMM'N v. CAROLINA UTIL. CUSTOMERS ASS'N

[163 N.C. App. 46 (2004)]

we remand this matter for a new hearing on the petition to terminate respondent-mother's parental rights. Because of our resolution of this matter, we need not address respondent-mother's remaining assignments of error.

In summary, with respect to respondent-father, the TPR order is vacated, while with respect to respondent-mother, the TPR order is reversed and remanded.

Vacated in part; reversed and remanded in part.

Judges TIMMONS-GOODSON and HUNTER concur.