McCULLOUGH, Judge.
This appeal arises from the termination of the parental rights of the biological mother (respondent-mother) of her daughter P.S. The biological father of the minor child is not a party to this appeal.
P.S. was born on 1 July 2001. On the day of her daughter's birth, respondent-mother testified that she had used crack cocaine in response to an argument she had with the biological father. Respondent-mother then took her grandmother's blood pressure medication. The juvenile was born cocaine positive, had lost oxygen to the brain, and had suffered seizures. P.S. initially came home with respondent-mother. The Johnston County Department of Social Services ("DSS") began working with respondent-mother on 3 July 2001 and substantiated neglect on 26 July 2001. Respondent-motheragreed to address issues of neglect on 22 August 2001. In the family preservation plan of 22 August 2001, among other things, respondent-mother was required to comply with the following: make an appointment at the Johnston County Mental Health Center for a substance abuse assessment; follow all recommendations made by the therapist; attend all scheduled medical appointments; submit to random drug testing; make her appointment at the "Day by Day" clinic for approximately a month and a half in the future; ensure that P.S. had diapers, food, and clothing; and attend parenting classes.
On 3 October 2001, after DSS had learned that respondent-mother and P.S. were not staying at the last agreed upon location, and learned that respondent-mother was actively using substances while caring for P.S., DSS attempted to locate both of them. A DSS caseworker was accompanied by police officers when she went to a home where respondent-mother and P.S. were thought to be. There, one of the officers found the child hidden in the shower with the curtain drawn. Respondent-mother arrived later, stating that she had used crack cocaine two hours earlier. At the time of that incident, respondent-mother had missed at least two scheduled medical appointments for P.S. P.S. was then placed in foster care. P.S. was adjudicated to be neglected and dependant in a hearing held on 28 November 2001. At the hearing, respondent-mother, by and through counsel, stipulated to the adjudication and the findings of fact by the court. By way of disposition determined on the same date, the child was to remain in the custodyof DSS with placement in foster care. DSS was to continue to work with respondent-mother towards reunification based on another family services case plan. In this plan, respondent-mother agreed to address her substance abuse issues by going to prescribed treatment, classes for her parenting skills, and to complete a psychological evaluation.
At a 90-day review of the neglect and dependency adjudications on 27 February 2002, the court found that the mother had not completed her psychological evaluation or her substance abuse treatment, and had again moved because the roof of the home she was staying in caved in after a snow storm. From this review, the court issued an order finding that respondent-mother refused to acknowledge her substance abuse problem, but that she did acknowledge she was unable to care for her other two children who were residing with other families. The order shows that DSS arranged for respondent-mother to take home a "Baby Think it Over Doll," a computerized doll which measured the care of a mother. Over the course of the weekend the doll was in respondent-mother's care, she missed three feeding times and three burping times; the doll was changed on only one occasion which was clearly evidenced by a very dirty diaper (entered in as evidence in the adjudication of neglect); it was left without a diaper for over ten minutes on more than six occasions; and it was mishandled 254 times. On one of respondent-mother's last visits with P.S., also in February 2002, she tested positive for cocaine. On or about 20 March 2002, a permanency planning hearing was held where P.S. was ordered to remain in custody of DSS and a plan for adoption was to be implemented. On or about 4 September 2002, another permanency planning hearing was held where the court continued P.S.'s plan for adoption. At both hearings, the court found P.S. could not be returned to respondent-mother immediately or within the next six months. At the two hearings, it was found that respondent-mother had not completed her parenting classes, did not have stable housing, had not completed substance abuse treatment, and was unable to provide appropriate care for P.S. in light of her extensive medical issues.
DSS filed a petition to terminate respondent-mother's parental rights on 29 August 2002. At the termination hearing, heard on 26 March 2003, before the trial court were all of the previous orders issued by the district court for P.S.'s case. Additionally, testimony was taken from Dr. Wendy Elliott, whose testimony concerned respondent-mother's psychological evaluation; respondent-mother, whose testimony was disputed as to her drug use; Mary Holder, respondent-mother's aunt; and Pamela Bowen and Kelly Davis, caseworkers for DSS. Based on the evidence before it, the court found that the circumstances under which P.S. was first found to be neglected and left dependent in respondent-mother's care were still present. This was determined after considering any changes in respondent-mother's circumstances. The court found that P.S., twenty months old at the time of the hearing, was a special needs child. Based on the evidence of these needs, the trial court foundthat if P.S. does not receive consistent care and services, there would be a serious risk to her future health and well-being. After hearing all the testimony and evidence, the court found that DSS had proved by clear, cogent, and convincing evidence that two grounds existed to terminate respondent-mother's parental rights and that it was in the child's best interest to do so.
On appeal from this order, respondent-mother raises four issues of alleged error by the trial court: (I) that the trial court did not hold a termination hearing or issue its order in the time mandated by statute; (II) that the trial court erred in holding one hearing as to both the adjudication and disposition orders required for the termination of her rights; (III) that the trial court erred in finding neglect; and (IV) that the trial court erred in finding dependency. Based on the analysis below, we affirm the trial court's order terminating the parental rights of respondent-mother.
I. Termination Hearing and Order
Respondent-mother contends that the trial court erred when it did not adhere to N.C. Gen. Stat. § 7B-1109(a) (2001), requiring the hearing on the termination of parental rights "be held...no later than 90 days from the filing of the petition or motion unless the judge pursuant to subsection (d) of this section orders that it be held at a later time." DSS filed its petition for termination on 29 August 2002, but the hearing was not held until 26 March 2003. Furthermore, respondent-mother argues that the order terminating her parental rights was filed beyond the "30 days following thecompletion of the termination of parental rights hearing." N.C. Gen. Stat. § 7B-1109(e).[1] We find both of these arguments to be unpersuasive.
A. Untimely Termination Hearing
DSS first contends that these issues were not properly objected to at trial and thus not properly preserved for our review. N.C.R. App. P. 10(b)(1) (2003). However, because the best interest of the child is of paramount concern in our courts, in this instance we consider the issue pursuant to our inherent power to address matters of such concern, and necessitating timely resolution. In re Montgomery, 311 N.C. 101, 109, 316 S.E.2d 246, 251 (1984) (child's best interest is paramount); N.C.R. App. P. 2 (2003) (suspension of the Rules of Appellate Procedure).
Next, DSS argues that, under N.C. Gen. Stat. § 7B-1109(d), the trial court has discretion to allow a termination hearing be held later than 90 days from the filing of the termination petition. Specifically, this statute allows:
(d) The court may for good cause shown continue the hearing for such time as is required for receiving additional evidence, any reports or assessments which the court has requested, or any other information needed in the best interests of the juvenile.
N.C. Gen. Stat. § 7B-1109(d)[2]. The plain language of this statute recognizes the paramount interest of the child in allowing the court, based on a discretionary determination of a showing of good cause, to continue the termination hearing until such time as the court has the most complete picture of the child's situation.
While there is no case law specifically on point, a finding of good cause for a motion to continue is addressed to the discretion of the trial court and will not be disturbed in the absence of an abuse of discretion. See, e.g., State v. Beck, 346 N.C. 750, 756, 487 S.E.2d 751, 755 (1997).
The petition to terminate respondent-mother's parental rights was filed on 29 August 2002. Pursuant to N.C. Gen. Stat. § 7B-1109(a), a hearing should have otherwise been held on or before 27 November 2002. Respondent-mother, after filing an affidavit of indigence on 9 October 2002, was appointed counsel that same day. Respondent-mother did not file an answer to the petition until 25 November 2002, well after the 30-day statutory limitation to answer such a petition and just before the court's required time deadline to hold the termination hearing. N.C. Gen. Stat. § 7B-1107 (2001). Anytime after respondent-mother's time to file her answer had expired, the court could have held the hearing to adjudicategrounds for termination and found it in the best interest of the child to terminate parental rights. See In re Tyner, 106 N.C. App. 480, 483, 417 S.E.2d 260, 261-62 (1992) (where we held the court cannot enter a "default-type" order terminating parental rights, but still may terminate parental rights pursuant to a proper hearing).
The court chose to accept and consider respondent-mother's untimely answer, which, because the answer denied all material allegations, then required a special hearing be held within 30 days to "determine the issues raised by the petition and answer or motion and response." N.C. Gen. Stat. § 7B-1108(b) (2001). After the parties had waived the statutory notice requirement, this hearing was held on 22 January 2003. In an order from the special hearing, filed 23 January 2003, the court set a 19 February 2003 date for the termination hearing. Then, at the 19 February 2003 term of court, a continuance was entered until the 5 March 2003 term. At the 5 March 2003 term of court, a continuance was entered until the 26 March 2003 term. Finally, at the 12 March term of court, a continuance was entered until the 26 March 2003 term. Good cause was set out in each of these written orders showing that a material witness could not attend or there was a conflict in the court docket.
Based upon these facts in the record, we find the delays in respondent-mother's hearing were initially spawned by her delay in seeking court-appointed counsel and the late answer she filed with the court. Maintaining the paramount interest of the child, thisanswer was still considered on its merits despite being untimely. As all allegations were denied in the answer, DSS filed a statutorily required special hearing which was heard the next day pursuant to N.C. Gen. Stat. § 7B-1108. At the conclusion of the order from the special hearing, the trial court scheduled the termination hearing approximately three weeks later. In granting discretionary continuances from the next two scheduled termination hearings, the trial court issued continuances for good cause shown. We do not find any of these steps were in error by the trial court, nor do we find them outside the court's discretion.
We note that this Court has recently reaffirmed the position that: "`[t]here is no support, statutory or otherwise, for the trial court's ruling that in North Carolina the right to counsel can be waived by inaction prior to the termination hearing.'" In re Hopkins, 163 N.C. App. 38, 45, 592 S.E.2d 22, 26-27 (2004) (quoting Little v. Little, 127 N.C. App. 191, 193, 487 S.E.2d 823, 825 (1997)). In Hopkins, we reversed and remanded the termination of a mother's parental rights when the district court refused to appoint her counsel on the first day of the termination hearing. The trial court was unwilling to postpone the hearing to a later date to appoint counsel. Id. Implicit in Hopkins is the value our courts place in having an attorney represent parents whose rights to remain as such are under threat of termination. If this right is improperly denied, Hopkins commands that it is prejudice per se. In the case at bar, respondent-mother did not make it known to the court that she was indigent and needed appointed counsel untilafter time had expired to properly file an answer to the termination petition. N.C. Gen. Stat. § 7B-1106(b)(3) (2001). The court immediately appointed counsel, considered respondent-mother's untimely answer on its merits, conducted a special hearing to consider the issues, and properly ordered continuances until all the evidence could be presented. This was all to the benefit of the procedural protections of her parental rights. Lastly, we note that respondent-mother could have benefitted substantively as well, as the delayed hearing gave her more time to better the conditions of her life which would become relevant at the time of the termination proceeding. See In re Ballard, 311 N.C. 708, 716, 319 S.E.2d 227, 232-33 (1984) (For an adjudication of neglect to establish grounds of termination, the court must consider any changed circumstances at the time of the termination hearing.).
This assignment of error is overruled.
B. Untimely Termination Entry
Respondent-mother also asserts that the trial court erred when filing its order outside the statutory limit to file such an order. While we agree that the order was untimely, we do not find respondent-mother's parental rights were prejudiced by this error.
In North Carolina's 2001 legislative session, our legislature made the following underlined additions to N.C. Gen. Stat. § 7B-1109(e) (2003):
The court shall take evidence, find the facts, and shall adjudicate the existence or nonexistence of any of the circumstances set forth in G.S. 7B-1111 which authorize the termination of parental rights of therespondent. The adjudicatory order shall be reduced to writing, signed, and entered no later than 30 days following the completion of the termination of parental rights hearing.
Id. (underline added); see S.L. 2001-208, s. 22. The plain language of the addition clearly mandates that the court enter its order from the termination hearing "no later than 30 days" from the hearing's completion. As with the changes made to N.C. Gen. Stat. § 7B-1109(d), it is clear these most recent legislative changes have been made to ensure a more timely process throughout these termination proceedings.
In the case at bar, the hearing was held on 26 March 2003, and the order terminating respondent-mother's parental rights was not entered until 21 May 2003. However, at the close of the hearing, the court set out the findings of fact of neglect and dependency, by "clear and convincing evidence" that it had found and wanted DSS to set out in a draft order. This consisted of six pages of the transcript which correlate with the written order. At the conclusion of these findings, the court found that termination of parental rights was in the best interest of the child. Respondent-mother immediately gave notice of appeal. While we stress to district courts and DSS to adhere to the recent changes in the Juvenile Code, on these limited facts, we cannot say respondent-mother was prejudiced by the delayed written order. See In re E.N.S., 164 N.C. App. 146, ___, 595 S.E.2d 167, 171-72 (2004) (where we held that respondent failed to show prejudice on the sole basis a juvenile order was entered beyond the 30 days from thehearing as required by N.C. Gen. Stat. § 7B-807(b) (2003) and N.C. Gen. Stat. § 7B-905(a) (2003)).
This assignment of error is overruled.
II. Single Hearing for Adjudication and Disposition
Respondent-mother next contends that the trial court erred in failing to properly conduct a bifurcated termination hearing. We do not agree.
A petition to terminate parental rights proceeds in two stages: (1) the adjudicatory stage, governed by N.C. Gen. Stat. § 7B-1109; and (2) the dispositional stage, governed by N.C. Gen. Stat. § 7B-1110 (2001). During the adjudicatory stage, the petitioner must show by "clear, cogent, and convincing evidence" the existence of one or more of the statutory grounds authorizing termination of parental rights. N.C. Gen. Stat. § 7B-1109(f). If at least one of these grounds is found, the court moves to the dispositional stage where
the court shall issue an order terminating the parental rights of such parent with respect to the juvenile unless the court shall further determine that the best interests of the juvenile require that the parental rights of the parent not be terminated.
N.C. Gen. Stat. § 7B-1110(a) (2003). By its terms, the statute requires the court terminate parental rights "unless" the "best interest of the child," a discretionary standard applied by the trial court, is not protected by termination. In re Parker, 90 N.C. App. 423, 431, 368 S.E.2d 879, 884 (1988). We have held:
[A]lthough the court is required to apply different evidentiary standards at each of thetwo stages, we discern no requirement from the statutes or from Montgomery that the stages be conducted at two separate hearings. Moreover, since a proceeding to terminate parental rights is heard by the judge, sitting without a jury, it is presumed, in the absence of some affirmative indication to the contrary, that the judge, having knowledge of the law, is able to consider the evidence in light of the applicable legal standard and to determine whether grounds for termination exist before proceeding to consider evidence relevant only to the dispositional stage.
In re White, 81 N.C. App. 82, 85, 344 S.E.2d 36, 38, disc. review denied, 318 N.C. 283, 347 S.E.2d 470 (1986) (citations omitted); see also, In re Dhermy, 161 N.C. App. 424, 433, 588 S.E.2d 555, 460-61 (2003).
In the case at bar, the trial court considered evidence offered by both DSS and respondent-mother. The evidence from both parties included evidence on the issues of neglect and dependency, and evidence of the best interest of the child. As in White, we credit the trial court with applying the relevant evidence to the correct legal standard: applying the evidence of neglect and dependency to the clear and convincing evidence standard before proceeding to disposition, where, in the court's discretion based on the evidence before it, the determination of the child's best interest is made.
This assignment of error is overruled.
III. Grounds for Termination
Lastly, respondent-mother contends the trial court lacked clear, cogent, and convincing evidence to support an adjudication that P.S. was a neglected and dependent child. We do not agree. For the adjudication phase of a termination hearing, the petitioner seeking termination must show by clear, cogent, and convincing evidence that grounds exist to terminate parental rights. In re Young, 346 N.C. 244, 247, 485 S.E.2d 612, 614 (1997); N.C. Gen. Stat. § 7B-1111(b) (2003). A finding of any one of the statutory grounds is sufficient to support termination of parental rights. In re Williamson, 91 N.C. App. 668, 678, 373 S.E.2d 317, 322-23 (1988); N.C. Gen. Stat. § 7B-1111(a)(1-9). In the case at bar, because we find the evidence of P.S.'s dependency to be overwhelming in light of her special needs and respondent-mother's untreated substance abuse problem, we need not consider whether P.S. is also neglected.
A juvenile will be adjudicated dependent if there is clear, cogent, and convincing evidence of the following:
That the parent is incapable of providing for the proper care and supervision of the juvenile, such that the juvenile is a dependent juvenile within the meaning of G.S. 7B-101, and that there is a reasonable probability that such incapability will continue for the foreseeable future. Incapability under this subdivision may be the result of substance abuse...or condition that renders the parent unable or unavailable to parent the juvenile and the parent lacks an appropriate alternative child care arrangement.
N.C. Gen. Stat. § 7B-1111(6). A "dependent juvenile" is defined as:
A juvenile in need of assistance or placement because the juvenile has no parent, guardian, or custodian responsible for the juvenile's care or supervision or whose parent, guardian, or custodian is unable to provide for the careor supervision and lacks an appropriate alternative child care arrangement.
N.C. Gen. Stat. § 7B-101(9) (2003). Pursuant thereto, the following must be shown: a parent is "incapable of providing for the proper care and supervision" of the child; that there is a reasonable probability that this incapability will continue for the foreseeable future due to adverse conditions under which the parent is acting; and lastly, that the parent lacks alternative care arrangements.
Relevant on the issues of dependency, Dr. Elliot testified as to respondent-mother's need for substance abuse treatment as she was vulnerable to overwhelming stress and that the condition was never treated. Ms. Bowen, P.S.'s initial social worker, testified as to respondent-mother missing doctor's appointments necessary to treat and monitor the child's special needs, using cocaine and other drugs while P.S. was found in a shower with the curtain drawn, and through which exhibits were entered of prior adjudication and disposition orders of the dependency of P.S. Ms. Davis, P.S.'s social worker at the time of the hearing, testified as to a review of alternative child care arrangements within respondent-mother's community for the placement of P.S., the extreme nature of P.S.'s present medical condition and her special needs, and that it would be of "very serious concern" to place P.S. back in the care of respondent-mother. Based upon the clear, cogent, and convincing evidence entered at the adjudication and disposition hearing, the court made the following findings of fact:
7. That the juvenile, was born cocaine positive and had seizures at birth, and she has been on medication for the seizures since that time; that the child was in need of an EEG since the month of August after her birth, and the mother failed to make any of the scheduled EEG appointments; that the mother also failed to make any follow up appointments with the neurologist and the pediatrician, which were important due to the almost fatal medical problems the child had at birth; that the mother further allowed the child to be supervised by individuals who she had informed JCDSS used controlled substances and who she indicated she did not feel would be appropriate caregivers for the child. Pam Bowen, social worker with the Johnston County Department of Social Services testified that the mother had not completed substance abuse treatment or parenting classes and during her involvement did not complete a psychological evaluation and did not obtain stable housing. Ms. Bowen further testified that parenting classes were available to the mother and that Ms. Bowen offered the mother transportation either through JCATS or Ms. Bowen herself would transport the mother to any appointment, treatment service or to locate housing.
****
9. The mother...further testified that her last drug use was the date the child was born, July 1, 2001, however the mother admitted to Pamela Bowen...that she used on October 3, 2001 and tested positive for cocaine on the date of a visit with the minor child...in February of 2002.
10. The mother failed to attend two of the child's necessary medical appointments because of problems with transportation.
****
15. Dr. Elliott performed a general evaluation on the mother.... Dr. Elliott testified that the mother had a full scale I.Q. of 76, which was borderline to low average intelligence range. Dr. Elliott further testified that the mother's coping skills are limited, the mother simplifies or withdraws from complex matters, is vulnerable to and overwhelmed by stress. Dr. Elliott recommended that the mother complete substance abuse treatment and therapy to develop coping skills.
****
22. [T]he mother has not made any progress during the time the Johnston County Department of Social Services attempted to work with her. The court further determines that most of the conditions that occurred at the time of removal still exist today.
23. The mother has a history of substance abuse issues for which she has failed to receive treatment and continues to deny. The mother testified that she last used cocaine on the date the child was born but was found to have used on at least two occasions since that time. The court further finds that the mother['s] substance abuse affected her ability to parent the minor child and contributed to the child's current medical status. The mother has limited coping skills, is vulnerable to stress and is further overwhelmed by stress, simplifies or withdraws from complex matters. The mother needs therapy to develop coping skills but has not initiated any therapy to date. The court further finds that the mother is incapable of providing care for the juvenile, such that the juvenile is dependent and there is a reasonable probability that such incapability will continue for the foreseeable future.
****
24. [T]he juvenile is a special needs child. She had three ruptured blood vessels in her brain at birth, which required substantial hospitalizations...is currently twenty months old and has eye problems, which requiredsurgery at three months of age and the juvenile currently wears glasses...has hearing aides [sic] as she only hears twenty percent (20%) out of her right ear and zero percent (0%) out of her left ear...requires and receives occupational therapy every Monday at the Tammy Lynn Center to develop motor skills, therapy every Tuesday at WakeMed, and every Thursday at Carolina Pediatrics...can't move her tongue from side to side, has difficulty swallowing and is eating stage three baby food...has acid reflux. One Wednesday per month...attends the Tammy Lynn Center for sign language lessons...because the child wears hearing aides [sic], which must be checked once a month, she needs close supervision as she could place the hearing aides [sic] in her mouth and swallow or damage...hearing aids cost $2,000 each...cannot crawl...must further visit the neurologist and have an eye exam every three months...does not receive consistent care and services, there are serious concerns for her future health and well being...is adoptable and that it is in the child's best interests to be adopted as the juvenile is [in] need of a safe, permanent home, in which she will receive consistent therapy and care to address her medical needs, which could be obtained through adoption...it is in the child's best interest that the parental rights of the mother be terminated. The juvenile is in need of stability in a safe and nurturing environment, with proper care and supervision that she did not receive while in her mother's care.
We believe these findings of fact support the conclusion of law that P.S. is a dependent juvenile and that the termination of her mother's parental rights is in P.S.'s best interest.
Therefore, after thorough review of the record and briefs, the trial court order terminating the parental rights of respondent-mother is hereby
Affirmed.
Judges TIMMONS-GOODSON and HUNTER concur.
Report per Rule 30(e).

Additionally, respondent-mother argues the first adjudication of neglect and the 90-day review hearing, neither of which were appealed from, were not timely entered. These are not before us on review.

We note that respondent-mother cites the current version of N.C. Gen. Stat. § 7B-1109(d) (2003) which was not in effect at anytime during the proceedings at bar. Thus, we make no determination whether or not respondent-mother was prejudiced in light of the legislature's additional language requiring the court to grant continuances beyond 90 days from the termination petition only in "extraordinary circumstances." See N.C. Gen. Stat. § 7B-1109(d); S.L. 2003-304, s. 2.