IN THE MATTER OF: J.S.H., Minor Child.
No. COA06-713
Court of Appeals of North Carolina.
Filed February 6, 2007
This case not for publication
Don Willey for Respondent-Appellant A.F.C.
M. Victoria Jayne for Respondent-Appellant J.M.H.
John C. Adams for Petitioner-Appellee Buncombe County Department of Social Services.
Michael N. Tousey for Guardian ad Litem-Appellee Alice Schmitz.
McGEE, Judge.
Respondent-Appellant A.F.C. (the mother) and Respondent-Appellant J.M.H. (the father) (collectively Respondents) appeal from the trial court's order terminating their parental rights to the minor child, J.S.H. We affirm.
The Buncombe County Department of Social Services (DSS) obtained non-secure custody of J.S.H. on 11 September 2003. The court entered an adjudication of neglect as to both Respondents on 9 February 2004, continued custody of J.S.H. with DSS, and awarded supervised visitation to Respondents. Respondents appealed from the 9 February 2004 order. In an unpublished opinion filed 19 July 2005, In Re: J.S.H, 171 N.C. App. 514, 615 S.E.2d 737 (2005) (COA04-1152) (unpublished), our Court affirmed the 9 February 2004 order and adjudication of neglect. Our Court recited the following findings of fact made by the trial court:
That [the father's] substance abuse assessment recommended thirty hours of treatment and AA/NA after care. That the father has not received substance abuse treatment as previously ordered. He is currently . . . taking an opiate due to surgery. The Court is concerned there is a substantial risk of relapse[.]
The father received a $50,000.00 workers' compensation settlement but was unable to state to the social worker what happened to that money. Prior to the filing of the petition the parents were living with family members and did not have their own residence. That they hoped to use the $50,000.00 settlement to purchase their own home, but ultimately could not. That the parties have been living with [J.M.;] however, that living situation is now unstable and uncertain.
We upheld the court's adjudication of neglect based on the evidence of Respondents' previous neglect of a sibling of J.S.H., lack of stable housing, history of substance abuse, failure to complete substance abuse treatment, and continued use of opiate-based medication.
While Respondents' appeal was pending, in a review order entered 28 September 2004, the court relieved DSS of further efforts to reunify J.S.H. with Respondents "due to the minimal compliance of [Respondents] with requirements for reunification[.]" The court changed the permanent plan "to adoption with a concurrent plan of guardianship with a court-approved caretaker." DSS filed a petition to terminate Respondents' parental rights on 15 October 2004, alleging the following grounds for termination: (1) Respondents had neglected J.S.H. and there was a reasonable probability that such neglect would continue; (2) Respondents willfully left J.S.H. in her placement outside the home for more than twelve months without reasonable progress in correcting the conditions which led to her removal; and (3) the father willfully failed to pay a reasonable portion of the costs of care for J.S.H. for a period of six months prior to the filing of the petition. See N.C. Gen. Stat. § 7B-1111(a)(1)-(3) (2005).

Delay in the Termination Hearing
During the pendency of Respondents' appeal in In re J.S.H., the court continued to hold review hearings and enter orders in the cause. See N.C. Gen. Stat. § 7B-1003 (2005) (authorizing entry of "a temporary order affecting the custody or placement of the juvenile" during an appeal). The court ceased reunification efforts on 28 September 2004, and changed the permanent plan "to adoption with a concurrent plan of guardianship with a court-approved caretaker."
After DSS filed the petition to terminate Respondents' parental rights on 15 October 2004, the court delayed its hearing of the petition based on a line of authority holding that Respondents' pending appeal in the cause divested the court of jurisdiction to proceed with termination. See In re J.C.S., 164 N.C. App. 96, 101-03, 595 S.E.2d 155, 158-59 (2004); In Re Hopkins, 163 N.C. App. 38, 42-43, 592 S.E.2d 22, 25 (2004), disc. reviewdenied, 359 N.C. 632, 616 S.E.2d 230 (2005); but see In re V.L.B., 164 N.C. App. 743, 745, 596 S.E.2d 896, 897 (2004); In re N.B., 163 N.C. App. 182, 183-84, 592 S.E.2d 597, 598 (2004). Citing this Court's holding in Hopkins, the court ordered that "the termination of parental rights hearing shall be held open until the [Supreme] Court defines [the scope of the court's jurisdiction during the pendency of Respondents' appeal] or until the Court of Appeals rules on the appeal of . . . [Respondents]." In subsequent review orders, the court found that J.S.H. was "thriving" in her foster placement and that Respondents had taken no steps to comply with their case plan and had failed to avail themselves of opportunities to visit J.S.H. In an order entered 25 May 2005, the court found that DSS had made a good faith effort to mediate its dispute with Respondents in April 2005, at which time the parties agreed "that when [Respondents'] appeal is completed and this case can move forward to the Termination of Parental Rights that mediation might be helpful at that time."
The North Carolina Supreme Court filed its opinion in In re R.T.W., 359 N.C. 539, 541-42, 614 S.E.2d 489, 491 (2005), confirming the court's jurisdiction to rule upon DSS's termination petition notwithstanding the respondent's pending appeal.[1] This Court filed our opinion deciding Respondents' appeal on 19 July 2005.
Michael Casterline, counsel for the father, moved to withdraw as counsel on 8 July 2005 in order to undergo a serious medical procedure. The court appointed Lori Loftis as substitute counsel for the father on 13 July 2005. DSS filed notice on 12 September 2005 for a hearing to be held on 26 September 2005 on its termination of parental rights petition.
The court allowed substitute counsel Lori Loftis to withdraw on 30 September 2005 due to her previous representation of the Child Support Enforcement Agency in an action against the father for non-payment of child support. The court re-appointed Michael Casterline to represent the father.
The mother moved to dismiss the termination petition on 30 September 2005 on the ground that the court had not heard the petition within ninety days of the 15 October 2004 filing date, as required by N.C. Gen. Stat. § 7B-1109(a). The mother observed that 350 days had passed since DSS filed the petition without any finding by the court of "extraordinary circumstances" in support of continuing the cause beyond the 90-day deadline. See N.C. Gen. Stat. § 7B-1109(d) (2005).
After a hearing held 30 September 2005, the court entered a "Continuance Order" on 24 October 2005, finding as follows:
[Counsel] Loftis informed the court that she has a conflict of interest in this matter as she was previously an attorney for the Child Support Agency and was involved in pursuing child support from the . . . father. The court appointed Michael Casterline to represent the . . . father . . . in the matter of the termination of parental rights hearing.
. . . [P]ursuant to N.C.G.S. § 7B-1109(b) extraordinary grounds exist to continue this termination of parental rights hearing to the November 14, 2005 term of court.
The court heard the mother's motion to dismiss on 4 November 2005, and denied the motion on 23 November 2005. The court found that DSS was required by law to file the termination petition within sixty days of the change of J.S.H.'s permanent placement plan to adoption on 28 September 2004. See N.C. Gen. Stat. § 7B-907(e) (2005). Due to respondents' pending appeal, and precedent such as Hopkins, the court found that it "was unable to proceed with the termination of parental rights hearing under current case law until the appeal was resolved." As soon as the Supreme Court resolved the jurisdictional issue inIn re R.T.W., DSS "noticed the matter for hearing" in September. The court noted its prior finding that the difficulties in securing representation for the father constituted "extraordinary circumstances" justifying its continuance of the hearing since July 2005. The court made an additional finding that "[e]xtraordinary cause clearly existed prior to July 2005 and the R.T.W. decision[,]" inasmuch as its jurisdiction to hear the petition was in doubt. Finally, the court found that ruling upon the termination issue as soon as possible served the best interests of all parties, including the mother. The court found that if the mother's motion was allowed and DSS was required to file a second petition, "a trial date would not be scheduled until 2006."
The court held the termination hearing on 16 and 23 November 2005, less than sixty days after re-appointing Michael Casterline to represent the father.

Termination Order
In its order terminating Respondents' parental rights, the court found each of the grounds for termination alleged in the petition. Based on J.S.H.'s successful foster placement and Respondents' failure to address the issues which led to the neglect of J.S.H., the court further concluded that termination served the best interests of the child. Respondents appeal.

The Mother's Appeal
The mother contends the motion to dismiss the petition filed by DSS on 15 October 2004, based on the court's failure to hear the petition within the 90-day deadline imposed by N.C. Gen. Stat. § 7B-1109(a). The mother faults DSS for filing the termination petition while her appeal from the 9 February 2004 adjudication of neglect was pending. Considering the previous conflicting authority on the issue of the court's jurisdiction, the mother argues DSS should have continued to work with Respondents toward the goal of reunification until her appeal was resolved. "Assuming that [DSS] could not in good faith proceed with [its] termination action because of the pendency of the mother's appeal[,]" the mother argues that "[DSS]'s actions  in electing to pursue adoption instead of pursuing reunification of [J.S.H.] with her mother  created the deadlock."
N.C. Gen. Stat. §7B-1109(a) (2005) provides that "[t]he hearing on the termination of parental rights shall be conducted . . . no later than 90 days from the filing of the petition or motion unless the judge pursuant to subsection (d) of this section orders that it be held at a later time." Although subsection (d) allows the court to continue the hearing for up to 90 days for good cause shown, it provides that "[c]ontinuances that extend beyond 90 days after the initial petition shall be granted only in extraordinary circumstances when necessary for the proper administration of justice, and the court shall issue a written order stating the grounds for granting the continuance." N.C. Gen. Stat. § 7B-1109(d) (2005). The failure to conduct a hearing within the statutory period does not constitute grounds for reversal of a termination order "absent a showing of prejudice to [the] respondent or any indication that the best interests of the children were prejudiced." In re As.L.G., 173 N.C. App. 551, 558, 619 S.E.2d 561, 566 (2005), disc. review improvidently allowed, 360 N.C. 476, 628 S.E.2d 760 (2006); see also In re S.W., __ N.C. App. __, __, 625 S.E.2d 594, 596, disc. review denied, 360 N.C. 534, 635 S.E.2d 59 (2006).
The lengthy delay at issue here was the result of factors beyond the control of the court. The mother acknowledges that at the time DSS filed its petition to terminate her parental rights on 15 October 2004, her appeal from the prior adjudication of neglect was pending. In its review order of 7 January 2005, the court correctly observed an unresolved split in authority regarding its jurisdiction to proceed in the cause while Respondents' appeal was pending. Subsequent review orders contained additional findings of the need to hold the matter open until either the North Carolina Supreme Court resolved the question of the court's jurisdiction, or the resolution of Respondents' pending appeal. Once the Supreme Court resolved the jurisdictional question by its 1 July 2005 opinion in In re R.T.W., the court proceeded.
The events in this case subsequent to the ruling in In re R.T.W. show "extraordinary circumstances" to prevent a timely hearing on a petition to terminate parental rights. On 8 July 2005, Michael Casterline moved to withdraw from his representation of the father because he was scheduled to have major surgery. On 13 July 2005, the court appointed Lori Loftis as substitute counsel for the father. On 12 September 2005, DSS noticed the 26 September 2005 hearing on its termination of parental rights petition. In late September, however, Lori Loftis moved to withdraw due to her previous representation of the Child Support Enforcement Agency in an action against the father for non-payment of child support. Inasmuch as the father's alleged non-payment of support was a significant factor in DSS' asserted grounds for termination, the district court needed to provide the father with new counsel. Although the court re-appointed Michael Casterline to represent the father, he was entitled by N.C. Gen. Stat. § 7B-1109(b) (2005) to reasonable time to prepare his defense to the petition. The court held the termination hearing on 16 and 23 November 2005, less than sixty days after re-appointing Michael Casterline as counsel for the father on 30 September 2005. In response to the mother's 30 September 2005 motion to dismiss due to the delay in the termination hearing, the court entered an order on 24 October 2005, finding that Lori Loftis' conflict of interest constituted"extraordinary circumstances" justifying a continuance until the 14 November 2005 term of court. In denying the mother's motion to dismiss on 23 November 2005, the court reiterated its finding of "extraordinary circumstances" due to the inability of the father's appointed attorney to proceed with representation. The court then made an explicit additional finding that "[e]xtraordinary cause [to continue the proceedings] clearly existed prior to July 2005 and the R.T.W. decision[,]" inasmuch as the court's jurisdiction to hear the termination petition was placed in doubt by Respondents' pending appeal. The court further noted that DSS had been required by statute to file the termination petition within sixty days of the change of J.S.H.'s permanent placement plan to adoption on 28 September 2004. See N.C. Gen. Stat. § 7B-907(e) (2005).
The mother does not challenge the court's findings that the jurisdictional issue created by her appeal from the 9 February 2004 adjudication of neglect, as well as the delays involved in securing legal representation for the father, were "extraordinary circumstances" justifying the court's continuance of the hearing beyond the 90-day statutory deadline. See N.C.G.S. § 7B-1109(a), (d). While a thirteen-month delay in hearing a termination petition is extreme, we do not believe that it warrants a reversal of the termination order under the unique facts of this case. The majority of the delay was attributable to Respondents' pending appeal and its impact on the court's jurisdiction. Other than the mother's complaint that DSS placed her case "in limbo" by filing the petition during the pendency of her appeal, she offers noshowing of prejudice to her or to J.S.H.. Throughout the relevant period, the court allowed the mother visitation with J.S.H. under the same conditions as existed prior to the change in the permanent plan. The mother failed to avail herself of her right to visitation or to demonstrate any attempt to comply with the prior orders of the court. Finally, we believe that reversing the court's order on grounds of the delay, without some showing of prejudice to the mother, would serve only to further postpone a final resolution to the matter to the detriment of J.S.H. Accordingly, we overrule this assignment of error.

The Father's Appeal
The father challenges each of the three grounds for termination found by the court, arguing that they are not supported by the court's findings of fact or by the evidence adduced at the termination hearing. By failing to assign error to any of the court's individual findings of fact, however, the father has waived any challenge to the evidentiary support for the court's findings. See Koufman v. Koufman, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991). Therefore, our review is limited to a determination of "whether the trial court's findings support its conclusion[s] of law." In re Beasley, 147 N.C. App. 399, 405, 555 S.E.2d 643, 647 (2001).
Under N.C. Gen. Stat. § 7B-1111(a)(2) (2005), a court may terminate a respondent's parental rights if:
[t]he parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile. Provided, however, that no parental rights shall be terminated for the sole reason that the parents are unable to care for the juvenile on account of their poverty.
A finding that a parent has willfully left a child in a placement outside the home will be upheld, notwithstanding some efforts by the parent to regain custody, if the parent fails to demonstrate reasonable progress in correcting the problems which led to the child's removal from the home. In re Oghenekevebe, 123 N.C. App. 434, 440, 473 S.E.2d 393, 398 (1996).
The court made the following findings pertinent to its adjudication under N.C.G.S. § 7B-1111(a)(2):
[1] [DSS] received [a] Child Protective Services complaint on or about September 8, 2003 following the birth of the minor child. This report alleged that [the mother] had lost custody of her other children, had not completed her substance abuse treatment as previously ordered by the [c]ourt, and that [the father] was an untreated, convicted sex offender. The report was investigated and substantiated and the Department sought and was granted non-secure custody of the minor child on September 11, 2003.
[2] The minor child was adjudicated a neglected child on November 19, 2003, in that she lived in an environment injurious to her welfare . . . .
[3] At [d]isposition, [the father] was . . . ordered to obtain a substance abuse assessment and follow through with the recommendations of that assessment; submit to random drug screens; attend AA and NA as recommended by his therapist; attend and successfully complete parenting classes; locate housing and maintain stable living arrangements for six (6) months; establish and maintain a means of financial support either through employment or public benefits; and submit to a psychological evaluation and follow all recommendations of that evaluation. [The father] was also ordered to either locate a previous Sex Offender Specific Evaluation or submit to a new evaluation and follow the recommendations of that evaluation.
[4] [The father] completed his substance abuse assessment . . . and it recommended he attend 20-30 hours of weekly outpatient counseling and AA/NA as after care. It also recommended he attend individual and/or group counseling and a psychiatric/medication evaluation. [The father] completed 20-30 hours of group counseling; however he failed to attend any AA/NA meetings, individual or group therapy, or participate in a psychiatric/medication evaluation. [He] did not participate in any Sex Offender Specific Treatment that was initially ordered on November 26, 2001.
[5] . . . [The father] completed the [psychological] evaluation . . . on March 26, 2004. According to the evaluator, Dr. Robert McDonald, [the father's] psychological testing was virtually invalidated by his responses to the evaluation's questions. . . . [The father's] minimization of his own conduct during the evaluation was consistent with that of a sex offender.
[6] The evaluation recommended that [the father] have a complete Sex Offender Specific Evaluation, that his prescription for opiate-based pain medication be reassessed due to his history of substance abuse and that he complete sex offender treatment. [He] attended one appointment with a sex offender treatment provider . . . and did not return for any further appointments or treatment. [He] failed to have his medication reassessed and continues to take opiate-based pain medication.
[7] [The father] was initially compliant with random drug screens, however later in the case he began stating that he was unable to get drug screens due to money. . . . [He] was employed sporadically throughout the pendency of the underlying juvenile matter, and was the beneficiary of a $50,000.00 workers[']compensation claim early on in that case. Failure to obtain court ordered drug screens. . . due to poverty is not a credible excuse.
[8] [The father] initially attended substance abuse treatment, but discontinued treatment on or about June 9, 2004. He continued to report to the Child and Family Team that he was attending treatment group even though he was not. [He] has an admitted long-standing drug abuse history.
[9] . . . The last visitation [the father] had with the minor child was June 16, 2004.
[10] [The father] . . . has not been able to hold a consistent job and reports being "laid off" from every job he has had. [He] was court ordered to pay reasonable child support for the minor child and is approximately $642.00 in arrears at the time of this hearing. The last child support payment made by the . . . [the father] was on or about September 15, 2005, in the amount of $10.15. [His] court ordered child support amount is $70.00 per month.
The court further found that the father had "not followed through with court ordered services for reunification, and the conditions that led to [J.S.H.] being placed in [DSS] custody continue to exist." Finally, in finding grounds for termination under N.C.G.S. § 7B-1111(a)(2), the court noted that "[J.S.H.] has been in foster care and/or an out-of-home placement since September 11, 2003," and found that "[the father] has made no effort to comply with the orders of the [c]ourt in the underlying file to correct the conditions that led to the removal of [J.S.H.] from the home."
The quoted findings are sufficient to support the court's conclusion that the father failed to make reasonable progress toward fulfillment of the requirements of his court-ordered caseplan in the twelve months preceding 15 October of 2004. The father did obtain the court-ordered substance abuse assessment and a general psychological evaluation. However, he declined to complete the recommended treatment for his substance abuse and misled officials about his participation in treatment. The father did not comply with the recommendations of his psychological assessment. He failed to obtain a sex offender specific evaluation or provide proof to the court of a prior evaluation. Moreover, after initially submitting to court-ordered drug screens, he ceased this compliance in August of 2004, even though the screens were a condition of his visitation J.S.H.. The father last visited J.S.H. on 16 June 2004, and was inconsistent with visitation prior to that date. He failed to obtain a stable source of financial support or to satisfy his modest support obligation, despite sporadic employment and the receipt of a $50,000 workers' compensation settlement. Inasmuch as "[e]xtremely limited progress is not reasonable progress" for purposes of N.C.G.S. § 7B-1111(a)(2), In re Nolen, 117 N.C. App. 693, 700, 453 S.E.2d 220, 224-25 (1995), we hold the court's findings to be sufficient to support termination under this subsection. We note that the evidence introduced at the termination hearing in November 2005 reveals no significant progress by the father after the petition was filed.
"'The finding of any one of the grounds is sufficient to order termination.'"In re C.L.C., 171 N.C. App. 438, 447, 615 S.E.2d 704, 709 (quoting Owenby v. Young, 357 N.C. 142, 145, 579 S.E.2d 264, 267 (2003)). Accordingly, having upheld the court's finding of a basis for termination under N.C.G.S. § 7B-1111(a)(2), we need not review the additional grounds found by the court under N.C. Gen. Stat. § 7B-1111(a)(1) and (3).See In re Taylor, 97 N.C. App. 57, 64, 387 S.E.2d 230, 233-34 (1990).
The record contains additional assignments of error not addressed by Respondents in their briefs to this Court. Pursuant to N.C.R. App. P. 28(b)(6), we treat these remaining assignments of error as abandoned.
Affirmed.
Chief Judge MARTIN and Judge HUNTER concur.
Report per Rule 30(e).
NOTES
[1] The General Assembly's recent revision of N.C. Gen. Stat. § 7B-1003 applies to petitions filed on or after October 1, 2005, and does not affect our analysis of this case.