[164 N.C. App. 96 (2004)]

IN THE MATTER OF: J.C.S.; AND R.D.S., TWO MINOR CHILDREN

No. COA03-390

(Filed 4 May 2004)

**1. Child Abuse and Neglect— appeal from order—further trial court action**

The Court of Appeals denied a motion to dismiss an appeal from a permanency planning order as moot following the issuance of a trial court order terminating parental rights during the pendency of the appeal of the planning order. The Juvenile Code provides that the trial court's jurisdiction is limited to a temporary order affecting custody or placement during the pendency of appeal, and an order terminating parental rights is a permanent order. Cases dismissing similar appeals as moot did not address the trial court's jurisdiction.

**2. Child Abuse and Neglect— permanency planning hearing— timely**

A permanency planning hearing was held within 12 months of the initial order as required by statute, despite subsequent hearings.

**3. Appeal and Error— notice of appeal—different issue argued**

The Court of Appeals did not review an issue concerning a permanency planning order (one of several orders in this case) where defendant's notice of appeal concerned only a permanent adoption plan entered on a different date.

**4. Child Abuse and Neglect— permanency planning order— findings—sufficient**

There were sufficient findings of fact in a permanency planning order which would allow DSS to cease reunification efforts, and those findings were supported by the evidence. While the order does not contain a formal, specifically identified list of statutory factors, the court considered and made written findings about the relevant factors and did not simply recite allegations.

Appeal by respondent from order entered 3 December 2002 by Judge L. Suzanne Owsley in Catawba County District Court. Heard in the Court of Appeals 19 November 2003.

IN RE J.C.S.

[164 N.C. App. 96 (2004)]

*J. David Abernethy for petitioner-appellee Catawba County Department of Social Services.*

*M. Victoria Jayne for respondent-appellant.*

*Crowe & Davis, P.A., by H. Kent Crowe as Guardian Ad Litem for the minor children.*

ELMORE, Judge.

Penny S. (respondent) appeals from a permanency planning order (permanency planning order), entered in open court 3 December 2002 and filed 28 February 2003, setting a permanent plan of adoption for her minor children J.C.S., born 13 May 1987, and R.D.S., born 19 August 1991. For the reasons set forth herein, we affirm.

The record on appeal reveals that on 16 September 1999, the Catawba County Department of Social Services (DSS) filed a juvenile petition alleging that J.C.S. and R.D.S. were dependent and neglected juveniles within the meaning of N.C. Gen. Stat. §§7B-101(9) and (15). On 12 October 1999, respondent stipulated that she periodically left J.C.S. and R.D.S. home alone and unsupervised while she was at work, and respondent consented to the adjudication of the children as neglected and dependent on these grounds. Thereafter, on 7 December 1999 a dispositional order was entered in open court placing legal custody of J.C.S. and R.D.S. with DSS and specifically approving placement in respondent's home, conditioned upon respondent's compliance with the Family Services Case Plan/Service Agreement and the trial court's orders that respondent continue treatment with Mental Health Services, maintain stable housing and employment, and make appropriate child care arrangements. Shortly thereafter, in December 1999, respondent was charged with driving while impaired while R.D.S. and another child were with her in the car.

At some point prior to a review hearing held 1 February 2000, J.C.S. and R.D.S. began to reside with their maternal grandmother, where they remained until being placed in foster care on 7 June 2000. At the 7 November 2000 permanency planning review hearing, the trial court continued placement in foster care and set a permanent plan of reunification with respondent for both children. At the 27 February 2001 permanency planning review hearing, the trial court found that respondent was taking prescription medication for nerves, insomnia, headaches, and manic-depressive symptoms, and that "a

IN RE J.C.S.

[164 N.C. App. 96 (2004)]

slow transition of the minor children back into [respondent's] home is in the children's best interest," and again continued the children's foster care placement.

Following a permanency planning review hearing on 22 May 2001, physical custody of J.C.S. and R.D.S. was returned to respondent on a trial basis, despite the trial court's finding that respondent "continues to struggle with appropriate decisions affecting the lives of the minor children and her life[.]" This trial placement was continued through permanency planning review hearings held on 17 July 2001, 6 November 2001, and 26 February 2002. During this period of time, respondent completed a substance abuse assessment, Intensive Outpatient Treatment Services and the After Care Program, a DWI assessment, the Nurturing Program, and the Women at Risk Program, and continued in family therapy. Evidence was presented at the 26 February 2002 review hearing that J.C.S., then 14, had an older boyfriend who helped respondent pay the family's bills, and that respondent encouraged this relationship. Following the 26 February 2002 review hearing, respondent revealed that J.C.S. was pregnant. J.C.S. subsequently gave birth to twins prematurely in March 2002. Following the 23 April 2002 review hearing, the trial court found that J.C.S.'s babies were fathered by a 21-year-old illegal immigrant whom respondent had allowed to spend the night in her home with J.C.S., and ordered that the trial placement with respondent end immediately and that J.C.S. and R.D.S. be returned to foster care.

Following the 16 July 2002 permanency planning review hearing, the trial court found that J.C.S. and R.D.S. were doing very well in their foster home placements; that J.C.S. was doing a very good job caring for her twin sons; and that respondent had expressed a desire to move to Michigan, and ordered DSS to cease reunification efforts between respondent and her children. Thereafter, following the 3 December 2003 permanency planning review hearing, the trial court made the following pertinent findings of fact:

2. That the minor children continue to be placed in the G. [F]oster home and are doing very well in this placement.

. . .

6. That the minor child, [J.C.S.], is currently in the ninth (9th) grade at Hickory High School. Because she missed so many days of school last year, she will spend her first semester as a

freshman. She is working to complete her schoolwork and is passing her classes this year.

7. That the minor child, [R.D.S.], is currently in the fifth (5th) grade at a local elementary school. While his grades are better, the minor child is having some academic difficulty and will require some after-school assistance.

. . .

10. That both of the minor children continue to have supervised visitation with the mother for two hours each week at the Department of Social Services. During such visitation, the minor child [R.D.S.] appears to be distancing himself from the mother.

11. That the minor child, [R.D.S.], disclosed in a therapy session on October 24, 2002, that, although he loves the mother very much, he want[s] to be adopted by his foster mother.

12. That the mother has maintained housing through Section 8 in the Catawba Ridge Apartments.

13. That the mother is currently unemployed. She has reported that she has applied for disability and Medicaid.

14. That the mother is currently not paying child support for the minor children due to her unemployment.

15. That the mother has completed the Nurturing Program, but has been unable to consistently demonstrate appropriate parenting skills. When the minor child [R.D.S.] disclosed his wish to be adopted by the foster mother, the mother became upset and was unable to empathize with him or to display appropriate, supportive parenting responses, even with coaching from the therapist.

16. That the mother has completed a substance abuse assessment, Intensive Outpatient Treatment and After Care sessions. She has completed a DWI assessment which was required by DMV.

17. That the mother has completed the Women at Risk Program, but has been unable to consistently demonstrate improved problem-solving and decision-making capabilities.

18. That the mother continues to participate in family therapy through Mental Health.

19. That, although Court order [sic] to do so, the mother has not completed Parenting classes.

20. That, while she brings gifts, cards and food to the visits, the mother focuses the majority of her attention during visitation on the twin sons of [J.C.S.], rather than on the minor children, [J.C.S.] and [R.D.S.]. Despite being redirected to pay attention to the minor child, [R.D.S.], the mother has continued to do this. As a result, the minor child [R.D.S.] often plays by himself during visits because the mother does not pay much attention to him.

21. That the mother loves the minor children very much, but continues to believe that both of the minor children being placed in foster care was the fault of the minor child [J.C.S.] in becoming pregnant.

. . .

24. That the permanent plan for the minor children of adoption is appropriate and is in the best interest of the minor children.

25. That the Department of Social Services has exercised reasonable efforts to prevent or eliminate the need for continued placement out of the mother's home.

26. That return to the home of the mother is not in the best interest of the minor children, and is contrary to the health, safety and welfare of the minor children.

27. That the Department of Social Services has exercised reasonable efforts to assist the minor children in obtaining permanency and to serve the needs of the minor children.

The trial court then concluded, in pertinent part, as follows:

2. That [DSS] has exercised reasonable efforts toward reunification of the minor children with their mother, but reunification is not in the best interest of the minor children at this time.

. . .

5. That return to the home of the mother is not in the best interest of the minor children, and is contrary to the health, safety and welfare of the minor children.

Based on the foregoing, the trial court ordered that the permanent plan for both J.C.S. and R.D.S. be changed to adoption. From this permanency planning order, respondent appeals.

**IN RE J.C.S.**

[164 N.C. App. 96 (2004)]

## I. Motion to Dismiss

**[1]** At the outset, we note that on 3 November 2003, during the pendency of the instant appeal, the trial court entered an order purporting to terminate respondent's parental rights (TPR order) with respect to J.C.S. and R.D.S.. In considering the instant appeal, this Court is entitled to take judicial notice of this subsequent TPR order. *In re Stratton*, 159 N.C. App. 461, 462, 583 S.E.2d 323, 324, *appeal dismissed*, 357 N.C. 506, 588 S.E.2d 472-73, (2003). After ten days passed without respondent appealing the TPR order, *see* N.C. Gen. Stat. § 7B-1113 (2003), DSS subsequently moved this Court pursuant to N.C.R. App. P. 37(a) to dismiss the instant appeal, citing *Stratton* for the proposition that the TPR order rendered the instant appeal moot. This Court carefully considered the motion and by order entered 19 December 2003 denied DSS's motion to dismiss this appeal.

In considering DSS's motion to dismiss the instant appeal, this Court was presented with the important question of whether the trial court may properly exercise its jurisdiction and enter a subsequent order terminating parental rights during the pendency of an appeal, by the parent whose rights have purportedly been terminated by the subsequent TPR order, from an earlier order in the same case. This Court has recently considered precisely this question and answered in the negative, holding that the trial court exceeded its authority under N.C. Gen. Stat. § 7B-1003 by entering an order terminating the respondent's parental rights during the pendency of the respondent's appeal from an earlier permanency planning review order. *In re Hopkins*, 163 N.C. App. 38, 42-43, 592 S.E.2d 22, 24 (17 February 2004).

We note that in vacating the TPR order at issue in *Hopkins*, this Court employed an analysis identical to the analysis by which we concluded that DSS's motion to dismiss the present appeal should be denied. In the present case, as in *Hopkins*, respondent first appealed from a permanency planning order, which order set adoption as the permanent plan for the subject juveniles. In the present case, as in *Hopkins*, during the pendency of this earlier appeal, DSS filed a petition seeking termination of respondent's parental rights to the subject juveniles. In the present case, as in *Hopkins*, while the earlier appeal was still pending, the trial court considered DSS's petition and entered a TPR order, which purported to terminate respondent's parental rights to the subject juveniles. On these facts, this Court vacated the TPR order in *Hopkins*, holding that "by entering the TPR

order while respondent-father's appeal from the earlier permanency planning review order was still pending, the trial court exceeded the authority expressly granted to it under N.C. Gen. Stat. § 7B-1003 to 'enter a *temporary* order affecting the custody or placement of the juvenile' during the pendency of the earlier appeal." *Hopkins*, 163 N.C. App. at 42, 592 S.E.2d at 25 (emphasis supplied and retained).

Our Juvenile Code provides that during the pendency of an appeal from an earlier order, the trial court's authority over the subject juvenile is limited to entry of "a *temporary* order affecting the custody or placement of the juvenile as the court finds to be in the best interests of the juvenile or the State." N.C. Gen. Stat. § 7B-1003 (2003) (emphasis added). Because we conclude, as did this Court in *Hopkins*, that "[a]n order terminating parental rights to a juvenile is, by its very nature, a *permanent* rather than a *temporary* order affecting the juvenile's custody or placement[,]" *id.* at 42, 592 S.E.2d at 25, we rejected DSS' argument that entry of the TPR order rendered the present appeal moot, reasoning that the trial court lacked jurisdiction pursuant to N.C. Gen. Stat. § 7B-1003 to enter the subsequent TPR order during the pendency of respondent's instant appeal of the earlier permanency planning order.[1]

We are mindful that in *Stratton* and in the recent decision *In re N.B.*, 163 N.C. App. 182, 592 S.E.2d 597 (2 March 2004), two different panels of this Court have dismissed as moot the respondents' appeal from an order adjudicating the subject juveniles to be neglected and dependent, where a subsequent order terminating the respondents' parental rights to the subject juveniles was entered during the pendency of the respondents' appeal from the adjudication of neglect and dependency. However, as was the case in *Hopkins*, the instant case is distinguishable from *N.B.* and *Stratton* because neither *N.B.* nor *Stratton* addressed the issue of whether the trial court properly exercised its *jurisdiction* by entering a TPR order during the pendency of the parents' appeal from an earlier order. In both *N.B.* and *Stratton*, this Court's analysis was limited to determination of whether the subsequent TPR proceedings afforded the parents a sufficiently "inde-

---

1. We wish to clarify, however, that because the order terminating respondent's parental rights is not presently before this Court for review, the conclusions necessarily reached during this Court's consideration of DSS's motion to dismiss the instant appeal regarding the trial court's lack of jurisdiction to enter the TPR order have no effect on the validity of the TPR order, and must not be construed to disturb any part of the TPR order. *Chee v. Estes*, 117 N.C. App. 450, 452, 451 S.E.2d 349, 350 ("As a general rule, the appellate court obtains jurisdiction only over the rulings specifically designated in the notice of appeal as the ones from which the appeal is being taken.")

pendent adjudication" of the issues raised by the earlier adjudication proceedings; in each case this Court answered in the affirmative and concluded that the appeal from the earlier adjudication order should be dismissed as moot on these grounds. *Stratton*, 159 N.C. App. at 464, 583 S.E.2d at 325 ("In short, Mr. Stratton has already received a new, independent adjudication of the neglect issue and any resolution of the issues raised on this appeal [from the order adjudicating the children as neglected and dependent] will have no practical effect on the existing controversy."); *N.B.*, 163 N.C. App. at 183, 592 S.E.2d at 598 ("Where an appellant has 'received a new, independent adjudication of the neglect issue and any resolution of the issues raised on this appeal will have no practical effect on the existing controversy,' the appeal should be dismissed.") Because neither *Stratton* nor *N.B.* addresses the issue of the trial court's jurisdiction to enter a TPR order during the pendency of an appeal from an earlier order in the same case, those decisions do not control the outcome in the instant case. *In the Matter of Appeal from Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989) ("Where a panel of the Court of Appeals has decided the *same issue*, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court" (emphasis added)).

## II. *Permanency planning order*

We now return to respondent's appeal from the permanency planning order, which changed the permanent plan for J.C.S. and R.D.S. to adoption. By her first assignment of error, respondent contends the permanency planning order "was not supported by clear, cogent and convincing evidence, was not entered in accordance with [N.C. Gen. Stat. § 7B-907] and is contrary to North Carolina Law."[2] In her brief, respondent brings forward this lone assignment of error, under a single argument heading which is identical to this assignment of error as set forth in the record. Respondent then proceeds to argue, under this single heading, that: (1) the trial court failed to conduct a permanency planning hearing within one year of the initial order removing J.C.S. and R.D.S. from respondent's custody, as required by N.C. Gen. Stat. § 7B-907(a); (2) the order requiring DSS to cease reunification efforts, entered after the 16 July 2002 permanency planning review hearing, contained insufficient findings of fact; and (3) the permanency planning order's findings of fact were not proper under N.C. Gen. Stat.

2. Respondent's second assignment of error, as identified in the record, was not presented and discussed in her brief and is therefore deemed abandoned. *See* N.C.R. App. P. 28(a).

§ 7B-907(b), were insufficient to support the conclusion changing the permanent plan for J.C.S. and R.D.S. to adoption, and were not supported by the evidence.

We first note that respondent, by grouping this multiplicity of separate contentions and arguments together under a single assignment of error in the record and argument heading in her brief, has violated N.C.R. App. P. 10(c)(1), which requires that "[e]ach assignment of error . . . so far as practicable[] be confined to a single issue of law." However, because we have again elected to exercise our authority under N.C.R. App. P. 2, we have considered each of respondent's arguments, notwithstanding their improper presentation to this Court. We find each of respondent's arguments to be without merit.

**[2]** First, respondent contends the trial court failed to conduct a "permanency planning hearing within 12 months after the date of the initial order removing [J.C.S. and R.D.S. from respondent's] custody," as required by N.C. Gen. Stat. § 7B-907(a) (2003). Our review of the record indicates custody of the children was initially placed with DSS following the dispositional hearing held on 7 December 1999. Thereafter, following the permanency planning hearing held eleven months later, on 7 November 2000, the trial court selected a permanent plan of reunification with respondent. Accordingly, this argument is without merit.

**[3]** Second, respondent asserts the order entered after the 16 July 2002 permanency planning review hearing allowing DSS to cease reunification efforts contained insufficient findings of fact. However, in her notice of appeal filed in connection with the instant appeal, respondent indicates that she appeals only from the "Order entered in Catawba County Juvenile Court on Tuesday, December 3, 2002, ordering a Permanent Plan of Adoption for her two minor children[.]" The order allowing DSS to cease reunification efforts entered following the 16 July 2002 permanency planning review hearing is, therefore, not part of the present appeal. *See* N.C.R. App. P. 3(d) ("The notice of appeal . . . shall designate the judgment or order from which appeal is taken . . . .") Our review of the record does not reveal that respondent ever appealed from the order ceasing reunification efforts entered following the 16 July 2002 permanency planning review hearing, although she had every opportunity to do so, and her time to do so has long since run. Accordingly, we decline to further exercise our Rule 2 authority and review this order.

**[4]** In her final argument, respondent defines the "dispositive issue" as whether the trial court's findings in the permanency planning order support its conclusion that the permanent plan for J.C.S. and R.D.S. should be changed to adoption. Respondent argues they do not, because (1) the trial court did not make the requisite written findings as specified by N.C. Gen. Stat. § 7B-907(b), and (2) the findings were "not supported by clear, cogent, and convincing evidence."[3] We disagree.

Pursuant to N.C. Gen. Stat. § 7B-907(b), if at the conclusion of the permanency planning hearing the trial court determines the children are not to return home, the trial court must consider the following enumerated factors and make written findings of fact regarding those relevant to the case:

(1) Whether it is possible for the juvenile to be returned home immediately or within the next six months, and if not, why it is not in the juvenile's best interests to return home;

(2) Where the juvenile's return home is unlikely within six months, whether legal guardianship or custody with a relative or some other suitable person should be established, and if so, the rights and responsibilities which should remain with the parents;

(3) Where the juvenile's return home is unlikely within six months, whether adoption should be pursued and if so, any barriers to the juvenile's adoption;

(4) Where the juvenile's return home is unlikely within six months, whether the juvenile should remain in the current placement or be placed in another permanent living arrangement and why;

(5) Whether the county department of social services has since the initial permanency plan hearing made reasonable efforts to implement the permanent plan for the juvenile;

(6) Any other criteria the court deems necessary.

N.C. Gen. Stat. § 7B-907(b) (2003).

In the permanency planning order which is the subject of this appeal, the trial court concluded that the permanent plan for J.C.S.

---

3. Respondent cites no authority in support of her assertion that the findings must be supported by "clear, cogent, and convincing evidence." In fact, the trial court's findings of fact are conclusive on appeal if they are supported by any competent evidence. *In re Weiler*, 158 N.C. App. 473, 477, 581 S.E.2d 134, 137 (2003).

and R.D.S. should be changed to adoption. While the permanency planning order does not contain a formal listing of the § 7B-907(b) (1)-(6) factors, expressly denominated as such, among its 27 comprehensive findings of fact, we conclude the trial court nevertheless did consider and make written findings regarding the relevant § 7B-907(b) factors. Despite respondent's assertion to the contrary, the instant permanency planning order is clearly distinguishable from the order at issue in *In re Harton*, where a different panel of this Court vacated a permanency planning review order which simply stated a single evidentiary fact and adopted the DSS and guardian *ad litem* reports, and remanded to the trial court "to specially make the required findings of fact under N.C. Gen. Stat. § 7B-907(b)." *In re Harton*, 156 N.C. App. 655, 660, 577 S.E.2d 334, 337 (2003). Here, by changing the permanent plan for J.C.S. and R.D.S. to adoption, the trial court necessarily determined it was not in the children's best interests to return home within the next six months, pursuant to § 7B-907(b)(1); that the children should remain in their current foster care placement, with respondent continuing to have visitation rights, pending their adoption, pursuant to § 7B-907(b)(2) and (4); that adoption should be pursued despite the presence of potential barriers thereto, pursuant to § 7B-907(b)(3); and that DSS has made reasonable efforts to implement the original permanent plan for the children, pursuant to § 7B-907(b)(5).

After a careful review of the permanency planning order, we conclude that through findings of fact numbers 2, 3, 4, 6, 7, 9, 10, 11, 15, 17, 19, 20, 21, 22, 23, 25, 26, and 27, the trial court has made sufficient findings of ultimate facts concerning each of the § 7B-907(b) factors. While the permanency planning order does not specifically *identify* any of these findings as being made pursuant to any of the § 7B-907(b) factors, we do not read *Harton* to so require, as long as the trial court makes findings of fact on the relevant § 7B-907(b) factors and does not "simply 'recite allegations,' " but rather "through processes of logical reasoning from the evidentiary facts find[s] the ultimate facts essential to support the conclusions of law." *Harton*, 156 N.C. App. at 660, 577 S.E.2d at 337 (citations and quotation marks omitted).

Appellate review of a permanency planning order is limited to whether there is competent evidence in the record to support the findings and the findings support the conclusions of law. *In re Eckard*, 148 N.C. App. 541, 544, 559 S.E.2d 233, 235, *disc. review denied*, 356 N.C. 163, 568 S.E.2d 192-93 (2002). If the trial court's findings of fact are supported by any competent evidence, they are conclusive on appeal. *In re Weiler*, 158 N.C. App. 473, 477, 581 S.E.2d 134,

137 (2003). After a careful examination of the record, we conclude that the trial court's findings of fact were supported by competent evidence. The findings were supported by the detailed DSS report prepared in advance of the 3 December 2002 permanency planning hearing by the juveniles' caseworker, Carrie Beaver, as well as by the guardian *ad litem's* testimony at the hearing that he is "[i]nclined to agree with Carrie" and is "pretty much on board with DSS personnel." The trial court's findings that respondent, despite having completed the Nurturing and Women at Risk Programs as well as various substance-abuse treatment programs, remains "unable to consistently demonstrate appropriate parenting skills . . . [or] improved problem-solving and decision-making capabilities" are also supported by the several adjudication, disposition, review, and permanency planning orders entered at earlier stages of this case. All of the court orders included in the record on appeal collectively detail a history of inadequate supervision and poor decision-making by respondent with respect to her children, up to and including J.C.S. becoming pregnant and giving birth in March 2002 while living with respondent on a trial basis and respondent's failure to give R.D.S. proper attention, both during his trial placement in respondent's home following the birth of J.C.S.'s twins and later during visitation. Moreover, we conclude the trial court's findings of fact support the conclusions that DSS had exercised reasonable efforts toward reunification of J.C.S. and R.D.S. with respondent, and that changing the permanent plan from reunification to adoption was in the children's best interest.

Affirmed.

Judges BRYANT and CALABRIA concur.