IN THE COURT OF APPEALS OF NORTH CAROLINA

 2022-NCCOA-29

 No. COA21-310

 Filed 18 January 2022

 Iredell County, No. 19 JA 215

 IN THE MATTER OF: A.P.

 Appeal by respondent-mother from order entered 16 February 2021 by Judge

 Carole A. Hicks in Iredell County District Court. Heard in the Court of Appeals 17

 November 2021.

 Lauren Vaughan for Petitioner-Appellee Iredell County Department of Social
 Services.

 Parent Defender Wendy C. Sotolongo, by Assistant Parent Defender J. Lee
 Gilliam, for Respondent-Appellant-Mother.

 No brief filed for Respondent-Appellee-Father.

 Womble Bond Dickinson (US) LLP, by Jessica L. Gorczynski, for Guardian ad
 Litem.

 CARPENTER, Judge.

¶1 Respondent-Mother appeals from a permanency planning order (the “Order”),

 entered on 16 February 2021 following an initial permanency planning hearing. The

 Order granted legal and physical custody of the juvenile to Respondent-Father;

 ordered two hours of supervised visitation every other weekend to Respondent-
 IN RE A.P.

 2022-NCCOA-29

 Opinion of the Court

 Mother, allowing Respondent-Father to choose the place and supervisor of visitation;

 and waived further review hearings. On appeal, Respondent-Mother argues the

 Order was not consistent with her need for reasonable accommodations based on her

 intellectual disability, and therefore, violated Title II of the Americans with

 Disabilities Act of 1990 (“ADA”) and Section 504 of the Rehabilitation Act of 1973

 (“Section 504”). Furthermore, she contends the Order gave Respondent-Father “too

 much discretion” over the visitation plan. For the reasons set forth below, we affirm

 the Order in part; we vacate and remand the visitation provisions of the Order for the

 trial court to enter an appropriate visitation plan.

 I. Factual & Procedural Background

¶2 On 19 November 2019, the date of A.P.’s birth, the Iredell County Department

 of Social Services (“DSS”) received a report, from the hospital where Respondent-

 Mother gave birth, alleging neglect of A.P. on the basis Respondent-Mother has brain

 damage due to a past car accident and is unable to care for the newborn infant. On

 6 December 2019, DSS filed a juvenile petition alleging A.P. was a neglected juvenile.

 The petition alleged Respondent-Mother failed to provide basic care for the infant—

 including changing diapers and feeding—even with hands-on assistance from

 hospital staff. The petition further alleged Respondent-Mother was under the

 guardianship of her paternal aunt, S.L., who had cared for her since she was four

 years old and was the payee on Respondent-Mother’s disability benefits. Respondent-
 IN RE A.P.

 2022-NCCOA-29

 Opinion of the Court

 Mother was reported as being previously diagnosed with “mild mental retardation”

 and as having an IQ similar to that associated with a ten-year-old child. The petition

 described an emergency assessment held by DSS on 22 November 2019 in which

 Respondent-Mother admitted to participating in concerning behaviors including

 having unsafe, one-time sexual encounters with men whom she met online and

 intentionally killing cats. The assessment also revealed Respondent-Mother was

 jealous of the attention A.P. received from S.L., and Respondent-Mother had been

 found in her room with a knife explaining she “was going to hurt herself and just

 wanted to make everything go away.” The day after the assessment, Respondent-

 Mother and A.P. were released from the hospital to the care of S.L. Respondent-

 Mother and S.L. signed a safety plan in which Respondent-Mother agreed to be

 supervised at all times when with A.P., and S.L. agreed to provide “eyes-on”

 supervision.

¶3 On 15 January 2019, a hearing was held for determining whether a guardian

 ad litem should be appointed for Respondent-Mother. At the hearing, DSS made an

 oral motion to appoint a guardian ad litem in accordance with N.C. Gen. Stat. § 1A-

 1, Rule 17 for Respondent-Mother. The trial court found, inter alia, Respondent-

 Mother: is incompetent and cannot adequately act in her own interest, waived notice

 of the hearing and consented to the appointment of a guardian ad litem for her, is

 incompetent within the meaning of N.C. Gen. Stat. § 35A-1101 (2019), and lacks
 IN RE A.P.

 2022-NCCOA-29

 Opinion of the Court

 capacity due to mental retardation. Accordingly, the trial court appointed a guardian

 ad litem for Respondent-Mother.

¶4 On 12 February 2020, pre-adjudication and adjudication hearings were held

 before the Honorable Edward L. Hedrick, IV. On the same day, the trial court entered

 its adjudication order, making findings of fact by clear and convincing evidence and

 concluding A.P. was a neglected juvenile. A dispositional hearing was also held on

 12 February 2020. The guardian ad litem for A.P. filed a court report for the

 dispositional hearing in which she expressed concerns for A.P. continuing to live with

 S.L. and Respondent-Mother. She noted “if [S.L.’s] belittling behavior [toward

 Respondent-Mother] continues or escalates, the nexus of [Respondent-Mother’s]

 mental deficit, jealousy, and propensity for violence will push [Respondent-Mother]

 to the limits of her tolerance and result in harm to [A.P.]”. The guardian ad litem

 recommended A.P. be placed with S.L. and a new guardian be found for Respondent-

 Mother.

¶5 On 12 February 2020, the trial court entered its dispositional order in which it

 found, inter alia, that the primary conditions in the home that led to or contributed

 to the juvenile’s adjudication and to the Court’s decision to remove custody of the

 juvenile are the Respondent-Mother’s mental health status and her inability to

 provide care for the infant juvenile. It further found that placement of A.P. with S.L.

 would be in the juvenile’s best interest. The trial court concluded, inter alia, DSS
 IN RE A.P.

 2022-NCCOA-29

 Opinion of the Court

 made reasonable efforts to reunify and to prevent the need for placement of the

 juvenile outside of the juvenile’s own home. The trial court then ordered, inter alia,

 Respondent-Mother remedy the conditions in the home that led to or contributed to

 the juvenile’s adjudication and to the Court’s decision to remove custody of the

 juvenile by: (1) entering into and complying with the terms of a case plan; (2)

 cooperating with DSS and the guardian ad litem; (3) signing all releases of

 information necessary for DSS and the guardian ad litem to exchange information

 with their providers and monitor progress; (4) providing DSS and the guardian ad

 litem with a comprehensive list of all living adult relatives; and (5) not living in the

 home of A.P. The trial court also ordered legal and physical custody of A.P. to DSS

 and supervised visitation to Respondent-Mother for two hours per week.

¶6 On 8 July 2020, a review hearing was held pursuant to N.C. Gen. Stat. § 7B-

 906.1(a) (2019). The trial court entered an order the same day, finding, inter alia,

 Respondent-Mother had entered but not completed a case plan, and DSS had become

 aware of a potential father whom it found to be a potential placement provider for the

 juvenile. The trial court then concluded that legal and physical custody of the

 juvenile should continue with DSS. While paternity results were pending, the trial

 court allowed the putative father (“Respondent-Father”) to have two-hour weekly

 unsupervised visits with A.P. and continued supervised visitation for Respondent-

 Mother. On 24 July 2020, Respondent-Father confirmed paternity of A.P. and
 IN RE A.P.

 2022-NCCOA-29

 Opinion of the Court

 entered into a case plan with DSS. DSS held a child and family team meeting on 28

 July 2020 and placed A.P. with Respondent-Father and the paternal grandmother.

¶7 On 27 August 2020, Dr. George Popper, Ph.D., P.A., (“Dr. Popper”) performed

 a comprehensive psychological evaluation on Respondent-Mother as requested by her

 12 March 2020 DSS case plan, which consisted of multiple examinations to determine

 her cognitive and academic achievements, social-emotional development, personality,

 parenting skills, and mental health status. Respondent-Mother performed

 “extremely low” in the areas tested in the cognitive assessment. She received a full-

 scale IQ of 53 on the Weschsler Adult Intelligence Scale, Fourth Edition (WAIS-IV),

 which falls in the “intellectually disabled – moderate” range. Her test results on her

 mental status assessment were consistent with depression and anxiety disorder. In

 Dr. Popper’s view, it was “unrealistic for [Respondent-Mother] to assume the role of

 full-time parent” because “[s]he has not yet demonstrated she has the skills needed

 for self-care, nor has she demonstrated the skills needed to care for a young child.”

 Based on the examinations, Dr. Popper recommended Respondent-Mother to: (1)

 continue with supervised visits and with her parenting classes and modify visits if

 progress is noted; (2) attend individual counseling and possibly seek medication for

 her depression and anxiety; (3) train to improve domestic skills; (4) obtain innovation

 services; and (5) find a supported work placement or placement in a sheltered

 workshop.
 IN RE A.P.

 2022-NCCOA-29

 Opinion of the Court

¶8 An initial permanency planning hearing was held on 20 January 2021 before

 the Honorable Carole A. Hicks. Social worker Latoya Daniels testified Respondent-

 Mother participated in Pharo’s Parenting parent classes and parental coaching

 program for at least four months. DSS also offered Respondent-Mother the

 opportunity to be placed at the Thelma Smith Foundation, an assisted living facility,

 where she could work on “independent skills” and learn how to provide her basic

 needs, which she declined.

¶9 Krista McMillan, a foster care supervisor with DSS also testified. According

 to Krista McMillan, Respondent-Mother did not want to participate in the services of

 the Thelma Smith Foundation although they were offered to her, and DSS set up an

 intake appointment. DSS made referrals for Respondent-Mother to receive mental

 health treatment at Daymark; Respondent-Mother also declined those services.

 Additionally, DSS assisted Respondent-Mother with applying for innovation services,

 as recommended by Dr. Popper.

¶ 10 The remainder of the testimony during the permanency planning hearing

 focused primarily on Respondent-Mother’s visitation with A.P. According to

 Respondent-Father, A.P. had lived with him in the paternal grandmother’s home

 since the end of July 2020. Respondent-Father has held consistent employment, has

 had no issues providing care for A.P., and feels bonded with A.P. When Respondent-

 Father was asked by counsel for DSS if he would be willing to facilitate visits or
 IN RE A.P.

 2022-NCCOA-29

 Opinion of the Court

 supervise visits for Respondent-Mother, he replied, “I mean, due to the past, I don’t

 [sic] willing just because of, you know, prior history. So I kind of stay away from

 everything.” Although Respondent-Father confirmed he did not want to supervise

 visits for Respondent-Mother himself, he did testify that his mother and other friends

 or family would be willing to supervise visits. On cross-examination, Respondent-

 Father testified he did not want Respondent-Mother to be part of A.P.’s life due to

 allegations she harmed the child, and he did not want Respondent-Mother to have

 supervised visits.

¶ 11 On 16 February 2021, the trial court entered the permanency planning Order,

 which granted legal and physical custody of A.P. to Respondent-Father and awarded

 supervised visitation to Respondent-Mother every other weekend for a minimum of

 two hours, giving Respondent-Father discretion to choose the location and supervisor

 of the visitation. Respondent-Mother gave timely notice of appeal.

 II. Jurisdiction

¶ 12 This Court has jurisdiction to address Respondent-Mother’s appeal from the

 Order pursuant to N.C. Gen. Stat. § 7A-27(b)(2) (2019) and N.C. Gen. Stat. § 7B-

 1001(a)(4) (2019).

 III. Issues

¶ 13 The issues before the Court are whether: (1) the trial court’s findings of fact

 support its conclusion of law that DSS made reasonable efforts to unify and to
 IN RE A.P.

 2022-NCCOA-29

 Opinion of the Court

 eliminate the need for placement of the juvenile in light of Respondent-Mother’s

 intellectual disability; (2) the trial court’s finding of fact regarding DSS’s reasonable

 efforts are supported by competent evidence; (3) the trial court made reasonable

 accommodations for Respondent-Mother, consistent with ADA and Section 504

 requirements; (4) the trial court erred in allowing A.P.’s father to choose the place

 and supervisor of visitation; and (5) the trial court erred in waiving future reviews

 and informing all parties of their right to file a motion for review of the ordered

 visitation plan given Respondent-Mother’s disability.

 IV. Standard of Review

¶ 14 “Appellate review of a permanency planning order is limited to whether there

 is competent evidence in the record to support the findings and the findings support

 the conclusions of law.” In re J.C.S., 164 N.C. App. 96, 106, 595 S.E.2d 155, 161

 (2004) (citation omitted). “The trial court’s findings of fact are conclusive on appeal

 if supported by any competent evidence.” In re L.M.T., 367 N.C. 165, 168, 752 S.E.2d

 453, 455 (2013) (citation omitted).

 V. Permanency Planning Order

¶ 15 On appeal, Respondent-Mother argues DSS failed to make the necessary

 accommodations for her under the ADA and Section 504 when making efforts to

 reunify and eliminate the need for placement of the juvenile outside the juvenile’s

 own home. Specifically, Respondent-Mother asserts she “was entitled to reunification
 IN RE A.P.

 2022-NCCOA-29

 Opinion of the Court

 services specially tailored to accommodate her intellectual disability.” For the

 reasons set forth below, we are unpersuaded by Respondent-Mother’s arguments

 relating to the ADA and Section 504.

 A. DSS’s Compliance with the ADA and Section 504 when Making
 Reasonable Efforts

¶ 16 The parties do not dispute Respondent-Mother has a disability within the

 meaning of the ADA and Section 504 and is a qualified individual with a disability

 eligible for protection under these statutes.

¶ 17 Section 504 and Title II of the ADA “protect parents and prospective parents

 with disabilities from unlawful discrimination in the administration of child welfare

 programs, activities, and services.” U.S. Dep’t Health & Human Servs. & U.S. Dep’t

 Justice, Protecting the Rights of Parents and Prospective Parents with Disabilities:

 Technical Assistance for State and Local Child Welfare Agencies and Courts under

 Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation

 Act, (Aug. 2015), https://www.ada.gov/doj_hhs_ta/child_welfare_ta.html. The ADA

 provides: “no qualified individual with a disability shall, by reason of such disability,

 be excluded from participation in or be denied the benefits of the services, programs,

 or activities of a public entity, or be subjected to discrimination of any such entity.”

 42 U.S.C. § 12132. The ADA defines a “qualified individual with a disability” as

 an individual with a disability who, with or without
 reasonable modifications to rules, policies, or practices, the
 IN RE A.P.

 2022-NCCOA-29

 Opinion of the Court

 removal of architectural, communication, or transportation
 barriers, or the provision of auxiliary aids and services,
 meets the essential eligibility requirements for the receipt
 of services or the participation in programs or activities
 provided by a public entity.

 42 U.S.C. § 12131. Likewise, Section 504 provides: “[n]o otherwise qualified

 individual with a disability in the United States . . . shall, solely by reason of her or

 his disability, be excluded from the participation in, be denied the benefits of, or be

 subjected to discrimination under any program or activity receiving Federal financial

 assistance or under any program or activity conducted by any Executive agency . . .

 .” 29 U.S.C. § 794(a).

 1. Sufficiency of Conclusion regarding DSS’s Reasonable Efforts

¶ 18 We first consider whether there are findings of fact to support the trial court’s

 conclusion that DSS made reasonable efforts to prevent the need for placement of

 A.P. This Court has previously considered ADA protections afforded to parents in

 the context of the Juvenile Code. In In re C.M.S., we addressed the issue of whether

 the ADA precludes the State from terminating parental rights of an intellectually

 disabled parent. 184 N.C. App. 488, 646 S.E.2d 592 (2007). After considering

 persuasive authority from other jurisdictions, we held the ADA does not prevent the

 State’s termination of parental rights so long as the trial court made its statutorily

 required findings to show “the department of social services has made reasonable

 efforts to prevent the need for placement of the juvenile.” Id. at 491–93, 646 S.E.2d
 IN RE A.P.

 2022-NCCOA-29

 Opinion of the Court

 at 594–95; see also N.C. Gen. Stat. § 7B-507(a)(2) (2019). Thus, when a department

 of social services, such as DSS in the instant case, satisfies this requirement, it

 complies with the ADA’s mandate that individuals with disabilities be reasonably

 accommodated. Id. at 492–93, 646 S.E.2d at 595. We noted “Congress enacted the

 ADA to eliminate discrimination against people with disabilities and to create causes

 of action for qualified people who have faced discrimination. Congress did not intend

 to change the obligations imposed by unrelated statutes.” Id. at 492, 646 S.E.2d at

 595 (citations omitted).

¶ 19 We find the holding of In re C.M.S. on point in the case sub judice. Id. at 491,

 646 S.E.2d at 594; see also In re S.A., 256 N.C. App. 398, 806 S.E.2d 81 (2017)

 (unpublished) (rejecting a respondent-parent’s argument that the trial court ignored

 the requirements of the ADA and Section 504 when it awarded custody of the juvenile

 to the child’s father because the trial court made the proper findings under N.C. Gen.

 Stat. § 7B-507(a)(2) in its permanency planning order). Because the trial court in

 this case concluded “DSS has made reasonable efforts to reunify and to eliminate the

 need for placement of the juvenile,” it necessarily complied with the ADA’s directive

 that a parent not be “excluded from the participation in, be denied the benefits of, or

 be subjected to discrimination under any program.” See In re C.M.S., 184 N.C. App.

 at 492–93, 646 S.E.2d at 595; see also 42 U.S.C. § 12132. Additionally, we find this

 conclusion of law is supported by findings of fact 5, 6, and 8, which state:
 IN RE A.P.

 2022-NCCOA-29

 Opinion of the Court

 5. [DSS] made reasonable efforts to reunify and to
 eliminate the need for placement of the juvenile
 outside of the juvenile’s own home. Said efforts are
 as described in the social worker’s report and prior
 court orders.
 6. DSS has made reasonable efforts to identify an
 appropriate permanent plan for the juvenile. Said
 efforts are as described in the social worker’s report
 and the prior court orders. DSS initiated DNA
 testing to determine paternity in this matter;
 approved [Respondent-Father’s] home for
 placement; monitored [Respondent-Father’s] trial
 home placement; made referrals for [Respondent-
 Mother] to complete her case; attempted to engage
 [Respondent-Mother] in services specifically
 recommended in the Parenting Assessment by Dr.
 Popper; attempted to monitor [Respondent-
 Mother’s] compliance with her case plan and
 progress on completing the objectives in the
 Parenting Assessment.
 ....
 8. DSS attempted to enroll [Respondent-Mother] at the
 Thelma Smith Foundation in Salisbury to no avail.
 The Thelma Smith Foundation would provide
 training in domestic skills, help [Respondent-
 Mother] with transportation and employment, and
 provide [Respondent-Mother] with some level of
 independence. [Respondent-Mother] has continued
 to attend parenting classes and have her visits
 supervised by parenting skills teachers, yet she still
 is unable to consistently and properly change the
 juvenile’s diaper and feed him.

¶ 20 The record and transcripts reveal DSS made reasonable efforts, consistent

 with Dr. Popper’s recommendation, to assist Respondent-Mother with her supervised

 visits, mental health issues, parenting and home skills, and innovation services; thus,
 IN RE A.P.

 2022-NCCOA-29

 Opinion of the Court

 these findings of fact are supported by competent evidence.

 2. Sufficiency of Factual Findings

¶ 21 Respondent-Mother next challenges findings of fact 6, 12, 13, and 15, on the

 ground these findings are unsupported by competent evidence. We disagree and

 consider each finding in turn.

 a. Finding of Fact 6

¶ 22 Finding of fact 6 states in pertinent part, “[DSS] made referrals for

 [Respondent-Mother] to complete her case [and] attempted to engage [Respondent-

 Mother] in services specifically recommended in the Parenting Assessment by Dr.

 Popper . . . .”

¶ 23 As stated above, social worker Latoya Daniels and foster care supervisor Krista

 McMillan testified as to the services to which Respondent-Mother was referred

 including parenting coaching and classes, mental health services, supervised

 visitation, innovation services, and assisted living where Respondent-Mother could

 learn independent skills. These services were consistent with those recommended by

 Dr. Popper. We conclude finding of fact 6 is supported by competent evidence. See

 In re J.C.S., 164 N.C. App. at 106, 595 S.E.2d at 161.

 b. Finding of Fact 12

¶ 24 Finding of fact 12 states in pertinent part: “Respondent Mother is not making

 adequate progress within a reasonable period of time under the plan.”
 IN RE A.P.

 2022-NCCOA-29

 Opinion of the Court

¶ 25 Respondent-Mother expressly declined mental health services and services to

 assist her in improving independent skills despite Dr. Popper’s finding that she

 suffered from depression and anxiety, lacked basic parenting skills, and was unable

 to live independently. Additionally, social worker Latoya Daniels testified that DSS

 “had attempted to . . . assist [Respondent-Mother] to the best of [its] ability at this

 point” through Pharos parenting classes. Placing a diaper on the child, a basic skill,

 had been “cover[ed] for a significant amount of time.” Therefore, Respondent-

 Mother’s argument is without merit. We conclude there was competent evidence in

 the record to support finding of fact 12. See In re J.C.S., 164 N.C. App. at 106, 595

 S.E.2d at 161.

 c. Finding of Fact 13

¶ 26 Finding of fact 13 states in pertinent part, “Respondent Mother is not actively

 participating in or cooperating with the plan, DSS, and the GAL for the juvenile.”

¶ 27 Respondent-Mother argues finding of fact 13 is a conclusory finding not

 supported by the evidence. We disagree. The trial court determined a fact of

 consequence, that Respondent-Mother had not actively participated in or cooperated

 with her case plan, DSS, and the guardian ad litem for the juvenile—and this finding

 is supported by competent evidence. The guardian ad litem’s 20 January 2021 court

 report stated Respondent-Mother had not complied with DSS requests to maintain

 visits nor the court’s orders to adhere to a case plan and was “combative on the topic
 IN RE A.P.

 2022-NCCOA-29

 Opinion of the Court

 of information flow” during the case review meeting. The guardian ad litem

 concluded Respondent-Mother “continues to have shown little growth in her ability

 to care for a child.” The testimony of the social workers also supports this finding.

 Therefore, we conclude finding of fact 13 is supported by competent evidence. See In

 re J.C.S., 164 N.C. App. at 106, 595 S.E.2d at 161.

 d. Finding of Fact 15

¶ 28 Finding of fact 15 states in pertinent part, “The Court finds by clear and

 convincing evidence that the Respondent Mother is acting in a manner inconsistent

 with the health or safety of the juvenile.”

¶ 29 In DSS’s 20 January 2021 court summary prepared for the permanency

 planning hearing, it reported there were continuing “concerns regarding diaper

 changes and feedings.” Additionally, Dr. Popper noted in his August 2020 assessment

 Respondent-Mother had not demonstrated skills needed to care for the juvenile child

 or herself and has a history of threatening self-harm. He further stated, “her limited

 cognitive resources, her lack of basic parenting skills, her emotional stability, and her

 inability to live independently are issues that impact her ability to safely and

 responsibly care for a young child at this time.” We conclude finding of fact 15 is

 supported by competent evidence.

¶ 30 Although there may have been evidence to support findings to the contrary, we

 hold findings of fact 5, 6, 8, 12, 13, and 15 are “supported by . . . competent evidence,”
 IN RE A.P.

 2022-NCCOA-29

 Opinion of the Court

 and therefore, are conclusive on appeal. See In re L.M.T., 367 N.C. at 168, 752 S.E.2d

 at 455.

 B. Adequacy of Services under the ADA

¶ 31 Next, Respondent-Mother challenges the adequacy of services offered by DSS

 in its case plan and at the permanency planning hearing. DSS and the guardian ad

 litem for A.P. contend Respondent-Mother waived the issue of ADA compliance by

 DSS because she failed to challenge the adequacy of services before or during the

 permanency planning hearing. After careful review, we conclude Respondent-Mother

 waived her argument on this issue by failing to raise it in a timely manner after

 receiving services under her DSS case plan.

¶ 32 In the unpublished case of In re S.A., our Court adopted the reasoning found

 in In re Terry, 240 Mich. App. 14, 27, 610 N.W.2d 563, 570–71 (2000) to hold the

 respondent-parent waived her argument as to adequacy of services offered by DSS.

 In re S.A., 256 N.C. App. 398, 806 S.E.2d 81, 2017 N.C. App. LEXIS 906, at *6. We

 also cited to In re Terry as persuasive authority in our published case of In re C.M.S.,

 184 N.C. App. at 492–93, 646 S.E.2d at 595, discussed supra. In In re S.A., the

 respondent-parent did not participate in the services offered by DSS. In re S.A., 256

 N.C. App. 398, 806 S.E.2d 81, 2017 N.C. App. LEXIS 906, at *6–7. In holding the

 respondent-mother waived her argument on appeal, we reasoned that at no time did

 she object to the adequacy of the services being offered by DSS—neither before nor
 IN RE A.P.

 2022-NCCOA-29

 Opinion of the Court

 during the permanency planning hearing. Id. at *6.

¶ 33 Respondent-Mother attempts to distinguish In re S.A. from the instant case on

 the grounds the parent in In re S.A. “had a physical disability rather than an

 intellectual one.” This argument is without merit. We are again persuaded by the

 Michigan Court of Appeals case of In re Terry. 240 Mich. App. at 26, 610 N.W.2d at

 570. In In re Terry, the respondent-parent alleged she was a “qualified individual

 with a disability” as defined by the ADA because of her intellectual limitations. The

 court in In re Terry stated “[a]ny claim that the [social services agency] is violating

 the ADA must be raised in a timely manner . . . so that any reasonable

 accommodations can be made.” 240 Mich. App. at 26, 610 N.W.2d at 570. Further,

 “[t]he time for asserting the need for accommodation in services is when the court

 adopts a service plan . . . .” Id. at 27, 610 N.W.2d at 571. The In re Terry court

 concluded that the respondent-parent’s challenge of the accommodations in the

 closing argument of the termination of parental rights proceeding was “too late . . . to

 raise the issue.” Id. at 27, 610 N.W.2d at 570–71.

¶ 34 Here, Respondent-Mother, like the mothers in In re S.A. and In re Terry,

 cannot show she raised an issue regarding the adequacy of services provided by DSS

 before or during the permanency planning hearing; therefore, we hold Respondent-

 Mother waived her argument by raising it for the first time on appeal. See In re S.A.,

 256 N.C. App. 398, 806 S.E.2d 81, 2017 N.C. App. LEXIS 906, at *6; In re Terry, 240
 IN RE A.P.

 2022-NCCOA-29

 Opinion of the Court

 Mich. App. at 27, 610 N.W.2d at 570–71.

 C. Visitation Order

¶ 35 In her next argument, Respondent-Mother maintains the trial court’s

 visitation order “was not an adequate accommodation for an individual with an

 intellectual disability” because it gave A.P.’s father and custodian too much discretion

 by allowing him to choose the place and the supervisor of visitation. She contends

 “this Court should remand the dispositional order for entry of an order that grants

 [her] appropriate visitation at a consistent location, to be supervised by a neutral

 third party.” In light of our case precedent, we agree the trial court improperly gave

 Respondent-Father substantial discretion to choose the location and supervisor for

 Respondent-Mother’s visitation; however, we reject Respondent-Mother’s contention

 that the visitation order did not provide her with reasonable accommodations,

 because she failed to provide any support for that argument. See N.C. R. App. P.

 28(b)(6) (“The body of the argument . . . shall contain citations of the authorities upon

 which appellant relies.”).

¶ 36 We review visitation determinations for abuse of discretion. In re C.M., 183

 N.C. App. 207, 215, 644 S.E.2d 588, 595 (2007). “When reviewing for abuse of

 discretion, we defer to the trial court’s judgment and overturn it only upon a showing

 that it was so arbitrary that it could not have been the result of a reasoned decision.”

 In re K.W., 272 N.C. App. 487, 495, 846 S.E.2d 584, 590 (2020) (citation omitted).
 IN RE A.P.

 2022-NCCOA-29

 Opinion of the Court

¶ 37 In decree 3 of the Order, the trial court mandated in pertinent part:

 The Respondent Mother shall be entitled to visit with the
 juvenile for a minimum of two hours every other weekend.
 These visits shall be supervised by [Respondent Father] or
 someone he approves. If the visiting Respondent Parent
 and the custodial Respondent Parent cannot agree
 regarding the specifics, visits shall take place from Noon-
 2pm at allocation [sic] [Respondent Father] chooses.
 [Respondent Father] shall arrange transportation for the
 juvenile to and from visits. Additionally, [Respondent
 Mother] shall be entitled to visitation of two hours
 surrounding major holidays such as Thanksgiving and
 Christmas. The Parents may agree on different times,
 locations, and frequency of visits if they desire.

¶ 38 N.C. Gen. Stat. § 7B-905.1 provides:

 (a) An order that removes custody of a juvenile from a
 parent . . . shall provide for visitation that is in the best
 interests of the juvenile consistent with the juvenile’s
 health and safety, including no visitation.”
 ....
 (c) If the juvenile is placed or continued in the custody or
 guardianship of a relative or other suitable person, any
 order providing for visitation shall specify the minimum
 frequency and length of the visits and whether the visits
 shall be supervised. The court may authorize additional
 visitation as agreed upon by the respondent and custodian
 or guardian.

 N.C. Gen. Stat. § 7B-905.1(a), (c) (2019) (emphasis added).

¶ 39 We stated in In re Custody of Stancil:

 When the custody of a child is awarded by the court, it is
 the exercise of a judicial function. [N.C. Gen. Stat. §] 50-
 13.2. In like manner, when visitation rights are awarded,
 it is the exercise of a judicial function. We do not think that
 IN RE A.P.

 2022-NCCOA-29

 Opinion of the Court

 the exercise of this judicial function may be properly
 delegated by the court to the custodian of the child.
 Usually those who are involved in a controversy over the
 custody of a child have been unable to come to a
 satisfactory mutual agreement concerning custody and
 visitation rights. To give the custodian of the child
 authority to decide when, where and under what
 circumstances a parent may visit his or her child could
 result in a complete denial of the right and in any event
 would be delegating a judicial function to the custodian.

 10 N.C. App. 545, 552, 179 S.E.2d 844, 849 (1971).

¶ 40 Here, the Order specified the minimum frequency—every other weekend—as

 well as the length of visits—two hours. Furthermore, the Order specified that the

 visits shall be supervised. Therefore, the Order met the minimum requirements for

 a visitation plan under N.C. Gen. Stat. § 7B-905.1.

¶ 41 Nevertheless, Respondent-Mother cites to In re C.S.L.B., 254 N.C. App. 395,

 400, 829 S.E.2d 492, 495 (2017) and In re J.D.R., 239 N.C. App. 63, 75–76, 768 S.E.2d

 172, 180 (2015) in arguing that the visitation plan in the Order must be reversed

 because it gives Respondent-Father too much discretion over her visits.

¶ 42 In In re C.S.L.B., this Court vacated a visitation order because it “improperly

 delegate[d] the court’s judicial function to the guardians by allowing them to

 unilaterally modify [r]espondent-mother’s visitation” by deciding if there was a

 “concern” she was using substances. 254 N.C. App. at 400, 829 S.E.2d at 495. In In

 re J.D.R., we concluded the visitation plan “delegate[d] to [the respondent-father]
 IN RE A.P.

 2022-NCCOA-29

 Opinion of the Court

 substantial discretion over the kinds of visitation” the respondent-mother would

 receive. 239 N.C. App. at 75, 768 S.E.2d. at 179. Additionally, the order placed

 conditions on the respondent-mother’s visitation rights and gave respondent-father

 discretion to decide whether the respondent-mother “complied with the trial court’s

 directives.” Id. at 75, 768 S.E.2d at 179.

¶ 43 After careful review, we agree the trial court improperly gave Respondent-

 Father substantial discretion over the circumstances of Respondent-Mother’s

 visitation by allowing him to choose the location and supervisor of the visitation. See

 In re J.D.R., 239 N.C. App. at 75, 768 S.E.2d at 179 (concluding the trial court’s

 “disposition order delegates to [respondent-father] substantial discretion over [some]

 kinds of visitation” by allowing him to determine whether the respondent-mother

 could eat lunch with the minor child at his school); In re K.W., 272 N.C. App. at 496,

 846 S.E.2d at 591 (“We have consistently held that [t]he court may not delegate [its

 grant of] authority [over visitation] to the custodian.”) (internal quotation marks

 omitted). Moreover, Respondent-Father testified he was not willing to facilitate or

 supervise Respondent-Mother’s visits and did not want Respondent-Mother to be part

 of A.P.’s life. This is precisely the scenario we cautioned against in Stancil: the trial

 court’s grant of authority to a custodian-parent to decide the circumstances of the

 other parent’s visitation plan, which could completely deny that parent of his or her

 right to visit with the minor child. See In re Custody of Stancil, 10 N.C. App. at 552,
 IN RE A.P.

 2022-NCCOA-29

 Opinion of the Court

 179 S.E.2d at 849. Therefore, we hold the trial court’s visitation order improperly

 delegated a judicial function to Respondent-Father by allowing him the sole

 discretion to decide where and by whom Respondent-Mother would be supervised

 during her visitations with the minor child. We vacate the visitation order and

 remand to the trial court for a proper visitation plan.

 D. Future Review Hearings

¶ 44 In her final argument, Respondent-Mother asserts the trial court erred by

 waiving further review hearings pursuant to N.C. Gen. Stat. § 7B-906.1 because such

 a result “does not comport with fundamental fairness, the ADA, or A.P.’s best

 interest.” She further contends the trial court erred by “[m]erely informing” the

 parties of their right to file a motion for review of the visitation plan by notifying the

 parties in writing in the Order. As such, Respondent-Mother argues the Order should

 be remanded to require regular review hearings and continuous appointment of a

 guardian ad litem for Respondent-Mother for the pendency of the juvenile proceeding.

 We disagree.

¶ 45 N.C. Gen. Stat. § 7B-906.1(k) provides: “[i]f at any time a juvenile has been

 removed from a parent and legal custody is awarded to either parent . . ., the court

 shall be relieved of the duty to conduct periodic judicial reviews of the placement.”

 N.C. Gen. Stat. § 7B-906.1(k) (2019). N.C. Gen. Stat. § 7B-905.1(d) states “[i]f the

 court waives permanency planning hearings and retains jurisdiction, all parties shall
 IN RE A.P.

 2022-NCCOA-29

 Opinion of the Court

 be informed of the right to file a motion for review of any visitation plan entered

 pursuant to this section.” N.C. Gen. Stat. § 7B-905.1(d) (2019).

¶ 46 Here, the trial court stated in its visitation decree of the Order that “[a]ll

 parties are informed of the right to file a motion for review of this visitation plan.

 Upon motion of any party and after proper notice and a hearing, the Court may

 establish, modify, or enforce a visitation plan that is in the juvenile’s best interest.”

 It also retained jurisdiction and notified the parties that “no further regular review

 hearings [are] scheduled” after awarding legal custody to Respondent-Father.

¶ 47 In In re C.M.S. we adopted the rule followed by a majority of jurisdictions that

 “termination proceedings are not ‘services, programs or activities’ under the ADA.”

 184 N.C. App. at 491, 646 S.E.2d at 595 (citations omitted); see 42 U.S.C. § 12132.

 Similarly, we conclude abuse, neglect, and dependency proceedings are not “services,

 programs or activities” within the meaning of the ADA, and therefore, the ADA does

 not create special obligations in such child protection proceedings. See In re Joseph

 W., 305 Conn. 633, 651, 46 A.3d 59, 69–70 (2012) (stating the ADA does not act as a

 defense or create special obligations in neglect proceedings); M.C. v. Dep’t of Child. &

 Families, 750 So. 2d 705 (Fla. Dist. Ct. App. 2000) (explaining dependency

 proceedings are held for the benefit of the child rather than the parents; thus, parents

 may not assert the ADA as a defense in such a proceeding); 42 U.S.C. § 12132.

¶ 48 We hold the trial court met the statutory requirements set out in N.C. Gen.
 IN RE A.P.

 2022-NCCOA-29

 Opinion of the Court

 Stat. § 7B-906.1(k) and N.C. Gen. Stat. § 7B-905.1(d), and the ADA did not “change

 the obligations imposed by [these] unrelated statutes.” See In re C.M.S., at 492, 646

 S.E.2d at 595.

 VI. Conclusion

¶ 49 We affirm the Order in part because the trial court’s findings of fact are

 supported by competent evidence, and the findings of fact in turn support its

 conclusions of law. We hold Respondent-Mother waived her argument regarding the

 adequacy of services provided by DSS by raising the issue for the first time on appeal.

 We vacate the visitation portion of the Order and remand for entry of an order

 prescribing a proper visitation plan, because the court’s order on visitation gives

 Respondent-Father substantial discretion to decide the circumstances of Respondent-

 Mother’s visits. Finally, we hold the trial court met the statutory requirements

 imposed by N.C. Gen. Stat. § 7B-906.1(k) and N.C. Gen. Stat. § 7B-905.1(d), and the

 ADA does not expand the trial court’s obligations to Respondent-Mother under those

 sections.

 AFFIRMED IN PART, VACATED IN PART, AND REMANDED.

 Judges INMAN and ZACHARY concur.